**Denis HANLEY, Denis Hanley, Jr., Appellants,**

v.

**The STATE of Texas, Appellee.**

Nos. 10–95–252–CR, 10–95–251–CR.

Court of Appeals of Texas, Waco.

May 1, 1996.

Russell D. Hunt, Waco, for appellants.

John W. Segrest, Criminal District Attorney, E. Alan Bennett, Asst. Criminal District Attorney, Waco, for appellee.

Before CUMMINGS and VANCE, JJ.

## OPINION

VANCE, Justice.

Denis Hanley ("Hanley") and his son, Denis Hanley, Jr. ("Denis"), were convicted by a jury of misdemeanor assault. TEX.PENAL CODE ANN. § 22.01 (Vernon 1994 & Supp. 1996). The court assessed punishment at twelve months in jail, probated for twenty-four months. The appellants were tried together, and we will address their points of error in a single opinion.

Each appellant asserts two points. Both assert an identical point that the court erred in "suppressing evidence which would have impeached the testimony of the complaining witness." Hanley complains that the court erred in denying his requests to recuse the district attorney's office based on the appearance of impropriety. Denis complains that the court improperly instructed the jury on "provoking the difficulty." We will affirm the judgment.

### EVIDENCE AT TRIAL

Portions of the testimony concerning events of February 5, 1993, are fairly consistent. That night Angela Hanley and her boyfriend, Jason Hardwick, were driving around in West. Angela, Hanley's daughter and Denis' younger sister, was fifteen and a half years old. Patrick Wright, a seventeen-year-old whom Angela had previously dated, was also driving around West with friends. Some time before midnight, Wright "flashed"

the headlights in his vehicle, signaling Hardwick's vehicle to stop. Hardwick and Wright exchanged words and agreed to meet later at the parking lot of the West Bank and Trust.

Angela asked Jason to take her home. She entered the house crying and upset. Angela told her father and brother that Wright had told Hardwick that he was going to "whip [Hardwick's] ass." Hanley testified that Angela told him that Wright "was coming after her again." Hanley and Denis left the house around midnight to meet Wright at the bank parking lot. They took a baseball bat with them.

The testimony concerning the events in the bank parking lot varied substantially among the witnesses:

## JASON HARDWICK

Hardwick testified that the appellants arrived at the parking lot and told him that they were there "making sure nothing was going to happen." When Wright arrived, he exited his car and walked towards Hardwick. The appellants stepped in between Wright and Hardwick "and then yelling broke out between them three." The argument escalated between Hanley and Wright as Denis stood behind his father. Hardwick testified that Wright did not make any aggressive move towards Hanley. Denis then hit Wright "more than once." Wright stumbled and fell off a two- to three-foot ledge onto the asphalt on the lower level of the parking lot. Denis followed Wright to the lower level. Hardwick saw Denis make a kicking motion, but did not know whether Denis made contact with Wright. A crowd of approximately fifty people had gathered, and the crowd then began attacking Denis. As Denis made his way back to his car, Hanley grabbed the baseball bat. Hardwick and a friend took the bat away from Hanley and returned it to his vehicle.

## MATTHEW EUBANKS

Matthew Eubanks testified that he is a good friend of Wright. When he and Wright arrived at the parking lot, he remained in the car with the windows down while Wright began walking towards Hardwick. Hanley approached Wright "and just started putting his finger in [Wright's] face." According to Eubanks, Hanley initiated the argument and then "shoved" Wright, causing him to jump down to the lower level of the parking lot. Denis hit Wright, causing him to fall down, and then kicked Wright in the face three times. Eubanks testified that, prior to the attack, Wright had not made a fist or an aggressive move towards Hanley. The crowd, which Eubanks estimated at fourteen people, then scuffled with Denis. Eubanks saw Hanley with a baseball bat, but stated that Hanley did not use it.

## PATRICK WRIGHT

Wright testified that he was walking towards Hardwick in the parking lot when he encountered Hanley. He stated that Hanley was yelling and pushed him down a step. Hanley told Wright that he was "screwing up his life and his daughter's life and his family's life." Wright saw Denis, who was standing behind Hanley, clinching his fists. He did not see who hit him. He testified that he suffered a broken nose and that his eye was swollen shut.

## DENIS HANLEY, SR.

Hanley testified that he was watching movies with his wife, son, and daughter-in-law when Angela returned from her date with Hardwick. He and Denis spoke with Angela. She told Hanley that Wright was "coming after her again." Hanley stated that he and Denis went to meet Wright "to remind [him] of the promises that he and his mother had made, that he would stay away from my daughter." Hanley and Denis drove to the parking lot and remained in the car until they saw Wright exiting his vehicle "at a very fast walk" "hollering" at Hardwick. Hanley intercepted Wright asking him, "Do you know who I am?" Wright answered, "Yes." Hanley asked, "Do you know why I'm here?" to which Wright responded, "Yes."

According to Hanley, "statements were made back and forth." Wright was leaning over Hanley, cursing him.[1] According to

1. The testimony shows that Hanley and Hardwick are each approximately five feet eight inches tall and weigh 150 pounds. Wright and

Hanley, Wright was "beginning to pivot on his feet and his arm was coming up in a clinched fist.... He was completely focused on me and he was about to hit me, punch me." Denis hit Wright twice in the face. Wright, who was "obviously unconscious," fell "face first into the asphalt."

Hanley testified that he did not push or shove Wright nor did he throw any punches. When asked why he had taken the baseball bat, he stated, "Because I knew who these people were, I was concerned that we would be attacked by a large group of people when we went down there." He stated that there were forty or fifty people in the parking lot that night. Hanley testified that he did not go to the parking lot to defend Hardwick; rather, he "wanted Pat Wright to do what he said he would do, and that is to stay out of [Angela's] life."

## DENIS HANLEY, JR.

Denis testified that Wright and Hanley "squared off" about three feet from each other in the parking lot. Hanley told Wright, "You're ruining my life." Wright pointed at Hardwick and said, "He's f—ing your daughter." Denis, who was about two feet behind his father, saw Wright's fingers "twitching," saw his hand close, and saw him begin to turn. Denis testified, "[T]hen without even—almost like a reflex, I came out and I hit him approximately somewhere around the eyes.... His head kind of snapped back ... and then it went forward ... and then by that time I had brought my arm back again, and I followed through again." The second punch landed in Wright's temple area and he fell "like a wet noodle," rolling over the ledge onto the pavement below. Denis stated that his momentum carried him over the ledge and that one of his feet probably landed on Wright's back. Denis denied that he had gone to the parking lot with the intention to "beat up" Wright.

## DR. SMITH

Dr. George Smith, the emergency room doctor who treated Wright, testified that Wright had been knocked unconscious, that he suffered contusions, swelling, and abra-

sions, that he had a possible nasal fracture, and that his injuries were consistent with being hit with a fist or kicked in the face.

## EXCLUDED EVIDENCE

Appellants complain that "the trial court erred in suppressing evidence which would have impeached the testimony of complaining witness Wright." They argue that the exclusion of the evidence misled the jury regarding Wright's assaultive nature and denied them the ability to impeach his testimony. Appellants argue that they should have been allowed wide latitude in cross-examining Wright on his credibility and bias. TEX. R.CRIM.EVID. 610(b), 612(b). The State argues that appellants have not preserved their complaint because they did not seek to have the evidence admitted under Rule 612(b). *Id.* 612(b) ("impeaching a witness by proof of circumstances or statements showing bias or interest").

## MOTION IN LIMINE

Prior to trial, the State filed a Motion in Limine seeking to exclude any reference to a prior sexual assault on Angela by Wright alleged to have occurred in July 1992. Appellants argued that the alleged assault was admissible under Rule 404(a)(2) of the Rules of Criminal Evidence to show a pertinent character trait of the victim, Pat Wright, or under Rule 404(b) to show motive and opportunity. *Id.* 404. Counsel for Denis argued that the background evidence was important to understand "the general thrust of the Defendant's self-defense case." Counsel for Hanley argued that the evidence was relevant "to their actions and their intent and their reasoning, and the reason that they were acting in defense in this particular case of the daughter and sister."

At the hearing on the motion in limine, Hanley testified that in July of 1992, Angela was fifteen years old and was not allowed to date. She was, however, "seeing" Wright "socially." On the morning of July 8, Hanley discovered that Angela and a girlfriend and Wright and another boy had spent the prior night together.[2] Angela told Hanley that she

Denis are each approximately six feet four inches tall and weigh around 240 pounds.

2. Each girl had told her parents that she was spending the night at a third girl's home.

and Wright were lying on the floor, that Wright had "removed her clothing, fondled her breasts, and with his hands and fingers he caused her to bleed" by placing his finger in her vagina.

Hanley consulted an attorney and filed sexual assault charges against Wright with the sheriff's department. After the charges were filed, Angela was subjected to "extreme threats and harassment" at school. Hanley testified that he and Denis went to Wright's residence and spoke with Wright and his mother. The charges were eventually dropped.

Hanley testified that when Angela came home the evening of February 5, she was upset and fearful both for herself and for what she thought Wright was going to do to Hardwick. Hanley stated that he wanted to talk with Wright and tell him that he would refile the criminal charges if Wright did not keep his promise to stay away from Angela. Hanley stated that he and Denis talked and decided "the best thing we could do was to go down there and see if we could discourage him from continuing this."

On cross-examination, Hanley stated that Angela had been harassed "at the initiation of Pat Wright by his friends and relatives," but that Wright had not personally engaged in such conduct. The trial judge concluded that he had heard no evidence of Wright's general propensity for violence, and the court granted the State's motion in limine.

## AT TRIAL

After the State's direct examination of Wright, appellants argued that the State had "opened the door" and that the alleged sexual assault went to their theory of self-defense "because at that time [appellants] had a reasonable belief that [Wright] has some violent past history." The court determined that self-defense had not yet been raised.

## BILL OF EXCEPTION

After appellants rested their case and the court cleared the courtroom, they made an offer of proof through a bill of exception. Angela testified that the assault happened in July 1992, shortly after her fifteenth birthday. She and a girlfriend had told their parents they would be spending the night with another girlfriend, Sarah. Instead, the girls met their boyfriends—Wright and Huey Sherrill—at Sherrill's parents' house. Angela and Wright were to sleep on the floor. They were consensually kissing and fondling. Wright removed Angela's shorts and undid her bra. He then put his hand inside her underwear and put his fingers in her vagina. Angela asked him to stop, but he did not. She told him again to stop, which he did, but then began again. When Wright "tried to do it again" Angela "told him to quit and he got mad and he rolled over and went to sleep."

The next morning, the girls went to Sarah's house. Sarah's stepmother called the girls' parents. Angela told her parents about the incident. Hanley filed criminal charges against Wright. He also met with Wright and his mother to ask them to leave Angela alone. Angela testified that word quickly spread that her father was pressing charges against Wright. She testified about incidents of harassment at school and that her family knew of the incidents. Angela stated that Wright's threats against Hardwick on February 5 were actually directed at her. However, she testified that Wright never directly threatened or harassed her.

Hanley testified that after the July 1992 incident he obtained promises from Wright and his mother that Wright would leave Angela alone. He filed criminal charges against Wright but dropped them after Angela repeatedly begged him to because of the harassment she faced at school. Hanley testified that he went to the bank parking lot to "remind [Wright] of his promises and to tell him that I was going to refile the felony charges ... if he did not stay away from [Angela], as he agreed to."

After the proffer of the bill of exception, counsel for Denis urged the court to allow evidence of the incident because "it goes to the reputation and specific instances of violent conduct that the victim in the—the alleged victim in this case had previously conducted, and goes to the probative— whether—That is probative of whether [Denis] reasonably believed the use of force was necessary at that time." Counsel for Hanley argued that the evidence was rele-

vant to show appellants' intentions in going to the parking lot.

The court stated that the jury had already heard testimony that Wright and Angela had dated, that there was "bad blood" between the parties, and that Hanley and Denis believed Wright had been harassing Angela. The jury had also heard Wright testify to Hanley's statements in the parking lot that Wright was "ruining [Angela's] life" and Hanley's family's life. The court was reluctant to put Angela on the stand in open court.

■ To preserve a complaint for appellate review, the complaining party must make a timely, specific objection and obtain a ruling on the objection. *Broxton v. State,* 909 S.W.2d 912, 918 (Tex.Crim.App.1995). In addition, the point of error must correspond to the complaint made at trial. *Id.* An objection stating one legal theory may not be used to support a different legal theory on appeal. *Id.*

■ Appellants urged the court to admit the evidence on various theories: a pertinent character trait under Rule 404(a)(2); motive, opportunity and intent under Rule 404(b); and self-defense. They did not raise the question of limited cross-examination until their Motion for New Trial.

■ Although great latitude should be allowed in cross-examining witnesses to reveal possible bias, prejudice, or self-interested motives to falsify testimony, the burden of showing the relevance of particular evidence to the issue of bias rests on its proponent. *Janecka v. State,* 739 S.W.2d 813, 830 (Tex. Crim.App.1987). Moreover, the parameters of cross-examination for the showing of bias lie within the discretion of the trial judge. *Chambers v. State,* 866 S.W.2d 9, 27 (Tex. Crim.App.1993), *cert. denied,* — U.S. —, 114 S.Ct. 1871, 128 L.Ed.2d 491 (1994). The judge must balance probative value against prejudicial risks, *i.e.,* undue prejudice, embarrassment, harassment, confusion of the issues, and undue delay. *Id.* His decision will not be set aside absent an abuse of discretion. *Id.*

Even if appellants had preserved their complaint, we cannot say that the court abused its discretion in excluding the evidence of the alleged prior sexual assault. *Id.*

We overrule the points.[3]

### MOTION TO RECUSE

Hanley's second point asserts that the court erred in denying his requests to recuse the district attorney's office based on the appearance of impropriety. Prior to trial, Hanley filed a *pro se* "Motion to Appoint Prosecuting Attorney Pro Tem" alleging that the District Attorney had a conflict of interest requiring recusal. TEX.CODE CRIM.PROC. ANN. arts. 2.01, 2.07 (Vernon 1977 & Supp. 1996). He asked the court to appoint an assistant attorney general with whom he had consulted. Hanley subsequently filed a "Motion to Recuse Prosecutor" citing *State ex rel. Eidson v. Edwards,* 793 S.W.2d 1 (Tex. Crim.App.1990). Both motions were denied without a hearing.

■ The trial court may not disqualify a district attorney or his staff on the basis of a conflict of interest that does not rise to the level of a due-process violation. *State ex rel. Hill v. Pirtle,* 887 S.W.2d 921, 927 (Tex.Crim. App.1994). It appears from the record that Hanley, prior to the February 1993 assault, had filed a grievance against an assistant district attorney. Hanley's motions alleged that, because of the district attorney's "prejudice" and "predisposition," Hanley was initially charged with a felony rather than a lesser offense or not at all. He also alleged that the district attorney knew or should have known that the investigating police officer had not met the minimum licensing requirements as a peace officer.

The premise of Hanley's recusal motion was that he was improperly prosecuted because of his prior dealings with the district attorney's office. Hanley was tried for misdemeanor assault. There was no testimony from the investigating officer or any other law enforcement officer. Under these circumstances, we cannot say that Hanley's al-

**3.** Appellants' points are identical. Hanley designated his as "Point of Error Number One."

Denis designated his as "Point of Error Number Two."

legations rise to the level of a due-process violation necessitating the disqualification of the district attorney and his staff. *Id.* We overrule Hanley's second point.

### PROVOKING THE DIFFICULTY

■ Denis' first point asserts that the court improperly instructed the jury as to the law of "provoking the difficulty" because the instruction improperly limited his "defense of third person." The court instructed the jury on self-defense, defense of a third person, and provoking the difficulty. The jury was instructed that it should find Denis "not guilty" if the jury found Denis reasonably believed the force was immediately necessary to protect Hanley from Wright's use or attempted use of unlawful force. The jury was also instructed that self-defense is not available to a defendant who provoked the other's use or attempted use of force.

As to the defense of a third person, the charge stated:

You are likewise instructed as part of the law of this case, and as a qualification of the law on defense of a third person, that the use of force by a defendant against another is not justified if the defendant *knows* that the person whom he is seeking to protect provoked the other's use or attempted use of unlawful force, unless it is known to the defendant that:

(a) the person whom the defendant is seeking to protect abandons the encounter, or clearly communicates to the other his intent to do so reasonably believing he cannot safely abandon the encounter, and

(b) the other person, nevertheless, continues or attempts to use unlawful force against the person whom the defendant is seeking to protect.

So, in this case, if you find and believe from the evidence beyond a reasonable doubt that Denis Hanley, Sr., immediately before the difficulty, then and there did some act, or used some language, or did both, as the case may be, with the intent on his, Denis Hanley, Sr.'s, part to produce the occasion for assaulting Patrick Wright, and to bring on the difficulty with the said Patrick Wright, and that such words and conduct on Denis Hanley, Sr.'s, part, if there were such, were reasonably calculated to, and did, provoke a difficulty, and that on such account Patrick Wright attacked Denis Hanley, Sr., with unlawful force, or reasonably appeared to defendant to so attack Denis Hanley, Sr., or to be attempting to so attack Denis Hanley, Sr., and that the defendant Denis Hanley, Jr., did then and there *know* of such words and acts on the part of Denis Hanley, Sr., and Patrick Wright as aforesaid, but nevertheless assaulted the said Patrick Wright by the use of unlawful force, to wit, by hitting him in the face or on the head with a bat or with his hand, or by kicking him, then you will find the defendant guilty of assault.

(emphasis added).

Denis objected to the charge "as a whole to the inclusion of the provocation issue." He argued that the evidence showed that Hanley alone provoked the difficulty and thus the instruction was inapplicable to his own defense. Further, Denis objected to the language "did then and there know of such words and acts on the part of Denis Hanley, Sr." He argued:

So I think if the Court is going to charge the provocation issue, they also have to charge the issue that Mr. Hanley, Jr., shared the same intent to provoke the incident as his father did, and I think that mere knowledge or mere hearing it, as the Court has charged the jury, and just know of such words and acts on the part of Denis Hanley, Sr., implies that he does not have to share that same intent, just mere knowledge of them, and I think that's incorrect, an incorrect manner of charging this provocation issue, if it is going to be charged at all. And I do want to make it clear that I am objecting as a whole to the provocation issue.

The court overruled his objections.

Section 9.33 provides in part:

**Defense of Third Person**

A person is justified in using force or deadly force against another to protect a third person if:

(1) under the circumstances as the actor reasonably believes them to be, the actor

would be justified under Section 9.31 or 9.32 in using force or deadly force to protect himself against the unlawful force or unlawful deadly force he reasonably believes to be threatening the third person he seeks to protect; and

(2) the actor reasonably believes that his intervention is immediately necessary to protect the third person.

TEX.PENAL CODE ANN. § 9.33 (Vernon 1994).

Section 9.31, "Self-defense," provides that the use of force is *not* justified "if the actor provoked the other's use or attempted use of unlawful force. . . ." *Id.* § 9.31(b)(4) (Vernon Supp.1996).

■ By the language in section 9.33, the legislature placed the accused "in the shoes of the third person." *Hughes v. State,* 719 S.W.2d 560, 564 (Tex.Crim.App.1986). "So long as the accused reasonably believes that the third person would be justified in using [force] to protect himself, the accused may step in and exercise [force] on behalf of that person." *Id.* "Clearly what the legislature *did* intend was to justify use of [force] to protect a third person in any situation in which the third person would apparently be justified in using [force] to protect *himself.*" *Id.* (emphasis original).

Under the law of self-defense, Hanley would not have been justified in using force if he had provoked the incident. TEX.PENAL CODE ANN. § 9.31(b)(4). In determining whether Denis was justified in using force to defend Hanley under section 9.33, we place Denis into Hanley's shoes. *See Hughes,* 719 S.W.2d at 564. If Denis reasonably believed that Hanley was justified in using force to protect himself, Denis would be justified in stepping in and exercising that force on Hanley's behalf. TEX.PENAL CODE ANN. §§ 9.31, 9.33. Conversely, if Denis reasonably believed or knew that Hanley was *not* justified, *i.e.,* that Hanley had provoked the incident, Denis would not be justified in stepping in and using force. *Id.*

The applicability of section 9.33 is based on the accused's assessment of the circum-

stances. *Id.* § 9.33(1). The evidence shows that Hanley and Denis were together from the time they left their house until after Denis struck Wright. The charge authorized the jury to find Denis "not guilty" if it found that Denis "reasonably believed" that the force he used was immediately necessary to protect his father. The jury was also instructed that a defendant is not justified in using force to defend a third person if the defendant "*knows* that the person whom he is seeking to protect provoked the other's use or attempted use of force."[4] (Emphasis added.) The application paragraph of the charge required the jury to find that Hanley *intended* his words and acts *to provoke* the difficulty and that Denis *knew* of these words and acts.

The court's charge adequately instructed the jury on Denis' defense-of-third-party theory. Denis, standing in Hanley's shoes, cannot be said to have "reasonably believed" that he was justified in using force to defend Hanley when the jury found—as it did—that he "knew" of Hanley's intentional acts of provocation. Thus, we do not believe the court's instruction improperly limited Denis' defensive theory. We overrule his first point.

Having overruled all the points, we affirm the judgments.

---

4. The State argues that the charge placed a higher burden on the State because the charge required the jury to find that Denis *knew*—rather than *reasonably believed*—that his father provoked the difficulty.