*Court Of Appeals*
*Fourth Court of Appeals District of Texas*
*San Antonio*



# MEMORANDUM OPINION

No. 04-09-00372-CR

Reggie Lynn **BROWN**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 216th Judicial District Court, Bandera County, Texas
Trial Court No. CRDS-06-154
Honorable N. Keith Williams, Judge Presiding

Opinion by:    Phylis J. Speedlin, Justice

Sitting:       Sandee Bryan Marion, Justice
               Phylis J. Speedlin, Justice
               Marialyn Barnard, Justice

Delivered and Filed:   July 14, 2010

AFFIRMED

Reggie Lynn Brown appeals his conviction for the offense of possession of methamphetamine. On appeal, Brown argues that: (1) the trial court abused its discretion in denying his motion to suppress; (2) the evidence is legally insufficient to support his conviction; and (3) the court abused its discretion in excluding evidence of prior misconduct on the part of a witness. We affirm the trial court's judgment.

## BACKGROUND AND PROCEDURAL HISTORY

The following statement of the case is based on the trial testimony. On August 15, 2006, Corporal Matthew Jacobsen, in response to a tip from a confidential informant, arrived at the residence of Reggie Lynn Brown to investigate the suspected whereabouts of a wanted felon, Michael Estrellas. When Brown answered the door, Jacobsen noticed a strong odor consistent with the manufacture of methamphetamine. After Brown told Jacobsen that Estrellas was not there, Jacobsen explained the consequences that would follow if Estrellas was found at Brown's residence. Brown subsequently gestured to the back of his house, which Jacobsen understood as Brown indicating that Estrellas was in the back. Jacobsen entered the house, found Estrellas and arrested him.

Jacobsen then obtained Brown's written consent to search Brown's residence, but only after explaining that he would obtain a search warrant if Brown refused. Jacobsen began searching the house while another officer waited on the porch with Brown and Lisa Forsythe, a woman who was with Brown when Jacobsen first arrived. During the search, Jacobsen found baggies containing a powder he suspected to be methamphetamine, precursors to manufacture methamphetamine, and another wanted felon, William Anderson. Anderson, Brown and Forsythe were all arrested. Thirty to forty-five minutes into the search, Sergeant Gerald Johnson arrived and photographed the evidence that had been collected.

Brown moved to suppress the evidence on the grounds that there was no probable cause to enter his home, and no chain of custody for the physical evidence seized. During the suppression hearing, Brown argued the evidence should be suppressed because he was subject to custodial

interrogation without being Mirandized, and a proper chain of custody for the drug evidence had not been established. The trial court denied the motion, and the evidence was admitted at trial. During his cross-examination of Johnson, Brown sought to question him about prior allegations of misconduct in an unrelated case in which it was alleged that Johnson planted drugs on the defendant. The trial court excluded this evidence. The jury convicted Brown of possession of methamphetamine in an amount over four grams and less than 200 grams. Brown was sentenced to twenty years' imprisonment, and now appeals.

### SUPPRESSION OF EVIDENCE

In his first issue, Brown contends that the trial court abused its discretion in denying his motion to suppress because his written consent to the search of his residence was involuntary. Specifically, Brown argues that because he acquiesced only after being informed that Jacobsen would obtain a search warrant if Brown refused, Brown's consent was coerced and therefore involuntary.

Our review of the record reveals that Brown did not argue in the trial court that his consent to the search was involuntary because it was the product of coercion or mere "acquiescence to a claim of lawful authority." *Paprskar v. State*, 484 S.W.2d 731, 737-38 (Tex. Crim. App. 1972), *overruled on other grounds*, *Kolb v. State*, 532 S.W.2d 87, 89 n.2 (Tex. Crim. App. 1976) (consent to search by appellant's wife was not free and voluntary where it showed no more than mere acquiescence to a claim of lawful authority under coercive circumstances). Rather, in the trial court, Brown asserted his consent was involuntary because he was subjected to custodial interrogation without being Mirandized. To preserve a claim for appellate review, the complaining party bears the

responsibility of clearly conveying to the trial judge the particular complaint, including the precise and proper application of the law as well as the underlying rationale. TEX. R. APP. P. 33.1(a); *Pena v. State*, 285 S.W.3d 459, 463-64 (Tex. Crim. App. 2009). In order to avoid forfeiting a complaint on appeal, the party must "let the trial judge know what he wants, why he thinks he is entitled to it, and to do so clearly enough for the judge to understand him at a time when the judge is in the proper position to do something about it." *Pena,* 285 S.W.3d at 464 (quoting *Lankston v. State*, 827 S.W.2d 907, 909 (Tex. Crim. App. 1992)). When a party asserts an argument on appeal that is different from its argument in the trial court, the issue is forfeited on appeal. *Reyna v. State*, 168 S.W.3d 173, 177 (Tex. Crim. App. 2005); *Rezac v. State*, 782 S.W.2d 869, 870 (Tex. Crim. App. 1990) (holding that a trial court objection stating one legal basis may not be used to support a different legal theory on appeal). The complaint Brown raises on appeal has a different legal rationale than the grounds for suppression he raised in the trial court. Accordingly, Brown's appellate issue has not been preserved, and we do not address its merits.

## SUFFICIENCY OF EVIDENCE

In his second issue, Brown asserts that the evidence is legally insufficient to support his conviction. Specifically, Brown argues that the State failed to establish a chain of custody for the drug evidence admitted against him, and thus the evidence should have been excluded and has no probative value. Brown relies on *Jones v. State*, 538 S.W.2d 113 (Tex. Crim. App. 1976), in which the court held the evidence was legally insufficient to prove the defendant possessed heroin because the seizing officer did not identify the balloon of heroin as the same balloon he had seized, initialed, and delivered to the police chemist, or otherwise connect the balloon of heroin to the defendant. *Id.*

at 114. The State replies that the officers' testimony identified the evidence as that seized from Brown's residence, and thus the evidence was properly admitted and is legally sufficient to support Brown's conviction.

**Standard of Review.** To determine the legal sufficiency of the evidence, we view the evidence in the light most favorable to the verdict and ask if any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Vodochodsky v. State*, 158 S.W.3d 502, 509 (Tex. Crim. App. 2005). The jury, as trier of fact, is the sole judge of the credibility of the witnesses and the weight to be given their testimony; therefore, reconciliation of any conflicts in the evidence is within the exclusive province of the jury. *Mosley v. State*, 983 S.W.2d 249, 254 (Tex. Crim. App. 1998). A jury is also permitted to make reasonable inferences from the evidence. *Id.* at 254-55.

**Chain of Custody.** The State's proof of the chain of custody of the evidence seized from Brown's residence consisted of testimony by law enforcement officers. Jacobsen testified that he collected the following items, among others, from the bedroom Brown identified as his bedroom: a large baggie with powder he believed was methamphetamine; a hot plate skillet with oil in it; two trash bags with the remnants of ingredients used to manufacture methamphetamine; and used hypodermic needles and a pyrex dish with "pill dough" in the adjoining bathroom. Jacobsen testified that he collected most of the evidence, but when Johnson arrived he collected some of the evidence during the last five to ten minutes of the search. Jacobsen testified he was present when Johnson photographed the evidence that was collected and laid out on the pool table; Jacobsen showed Johnson the locations where the evidence was found so he could photograph it. Jacobsen stated

Johnson placed the items into brown paper bags and sealed them; no list of the seized items was made and the suspected drugs were not weighed at the scene. Jacobsen stated he and Johnson then transferred the evidence from the residence to Johnson's vehicle, and Johnson transported it to the station; Johnson could not recall exactly which officer handled the evidence when it was taken to his vehicle. At the sheriff's office, Johnson placed the evidence inside an empty storage locker along with an evidence card which he signed; he did not record the date or time on the card. Johnson packaged the three quantities of suspected drugs into an envelope for mailing to the DPS lab. Lieutenant Allen Tucker was the only person with keys to the evidence locker at that time; he stated that he removed the sealed envelope of suspected drugs, placed it into a box, and mailed the box to the DPS lab for testing; he did not initial the envelope and also failed to sign the evidence card. When asked, Jacobsen, Johnson, and Tucker denied tampering with or altering any of the evidence.

Brown asserts the chain of custody is fatally fractured by several "missing links" which rendered the evidence inadmissible and without any probative value. Brown calls attention to the testimony by Jacobsen and Johnson that the drug evidence was not weighed, inventoried, or initialed at the scene, and the uncertainty as to whether it was Jacobsen or Johnson who collected each particular item of evidence. Brown also points out that there was no time or date noted on the evidence card signed by Johnson that he placed into the storage locker with the evidence from Brown's residence, and no identifying number on the locker where the evidence was stored at the Bandera County Sheriff's Department. Further, Lieutenant Tucker failed to initial the envelope of drugs when he removed it from the locker and mailed it to the DPS lab for testing. Finally, one of the baggies introduced in court (State Exh. 51) had a hole in it, which Brown argues suggests the

evidence was tampered with. Jacobsen, Johnson and Tucker all denied tampering with or altering any of the evidence. Johnson testified that the baggie did not originally have a hole in it, and the suspected drugs that he placed into that baggie were collected from a plate found in a closet of the guest bedroom, not Brown's bedroom.

The Rules of Evidence do not specifically define "chain of custody," but Rule 901(a) provides that the authentication or identification of an item for admissibility purposes is satisfied by evidence that is sufficient to support a finding that the item is what its proponent claims. TEX. R. EVID. 901(a); *Dossett v. State*, 216 S.W.3d 7, 17 (Tex. App.—San Antonio 2006, pet. ref'd). Evidence may be authenticated or identified by different methods, including testimony by a witness with knowledge that "a matter is what it is claimed to be." TEX. R. EVID. 901(b)(1); *Dossett*, 216 S.W.3d at 17; *Angleton v. State*, 971 S.W.2d 65, 68 (Tex. Crim. App. 1998). The trial court does not abuse its discretion by admitting evidence based on its belief that a reasonable juror could find the evidence has been authenticated or identified. *Dossett*, 216 S.W.3d at 17; *Pondexter v. State,* 942 S.W.2d 577, 586 (Tex. Crim. App. 1996). Proof of chain of custody goes to the weight of the evidence, rather than its admissibility. *Dossett*, 216 S.W.3d at 17; *Lagrone v. State,* 942 S.W.2d 602, 617 (Tex. Crim. App. 1997).

Gaps or theoretical breaches in the chain of custody do not affect the admissibility of the evidence, absent affirmative evidence of tampering or commingling. *Lagrone,* 942 S.W.2d at 617; *Dossett*, 216 S.W.3d at 17. The appellant has the burden to present affirmative evidence of tampering or commingling; the State bears no burden to disprove evidence tampering. *Dossett*, 216 S.W.3d at 17; *Stoker v. State,* 788 S.W.2d 1, 10 (Tex. Crim. App. 1989). A showing of the *possibility* of

tampering or commingling is not sufficient to render the evidence inadmissible; rather, it goes only to the weight of the evidence. *Dossett*, 216 S.W.3d at 17; *Darrow v. State,* 504 S.W.2d 416, 417 (Tex. Crim. App. 1974) (evidence that marihuana was stored in officer's locker for two weeks in room to which others had access, but no key to locker, showed only the possibility of tampering, and did not prohibit admission).

The trial court could have reasonably found that the State established an adequate chain of custody through the officers' testimony connecting the seized drugs to Brown. Jacobsen and Johnson testified, based on their personal knowledge, that the items of evidence were seized from Brown's bedroom and bathroom, were collected, photographed, and placed into sealed bags at the scene, and then transported to the sheriff's office and placed in an evidence locker. Johnson and Tucker testified the suspected drugs were packaged in a sealed envelope inside a box that was mailed to the DPS lab for testing and then returned. The officers' testimony was sufficient to support the court's belief that a reasonable juror could find the drug evidence had been authenticated. TEX. R. EVID. 901(a), (b)(1); *Angleton,* 971 S.W.2d at 68. Proof of the beginning and end of a chain of custody supports the admission of the evidence in the absence of affirmative evidence of tampering or alteration. *Stoker*, 788 S.W.2d at 10; *Dossett*, 216 S.W.3d at 17. The evidence of the punctured baggie suggests only the *possibility* of tampering, and does not prohibit admission of the evidence. *Darrow*, 504 S.W.2d at 417; *Dossett*, 216 S.W.3d at 17. Based on the absence of any affirmative evidence of tampering, the defects in the chain of custody pointed out by Brown affected only the weight of the evidence, not its admissibility. *Lagrone,* 942 S.W.2d at 617; *Dossett*, 216 S.W.3d at 17-18. We hold the trial court did not abuse its discretion in concluding that the State established a sufficient chain of custody

for the drug evidence to be admitted for the jury's consideration. Further, the jury was the sole judge of the weight to be given to the evidence, and we cannot say the defects in the chain of custody rendered the evidence devoid of any probative value. *Mosley*, 983 S.W.2d at 254. Viewing the trial evidence in the light most favorable to the jury's verdict, we conclude it is legally sufficient to support the jury's finding that Brown possessed the alleged quantity of methamphetamine.

### EXCLUSION OF EVIDENCE

In his third issue, Brown contends that the trial court abused its discretion in excluding evidence of a prior investigation of Johnson for allegedly planting drugs on a defendant in an unrelated Bandera County case; Brown argues the evidence bore directly on the credibility of Johnson and its exclusion was reversible error. The State argues that the prior misconduct was a mere allegation, and no "fact" was developed by Brown that would support a finding of prior misconduct by Johnson; therefore, the evidence was properly excluded.

*Analysis.* We review a trial court's admission or exclusion of evidence under an abuse of discretion standard, and will uphold the court's ruling as long as it falls within the zone of reasonable disagreement. *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1990); *Avila v. State*, 18 S.W.3d 736, 739 (Tex. App.—San Antonio 2000, no pet.).

During the pre-trial proceedings, the trial court granted the State's motion in limine with respect to any evidence concerning an investigation of Johnson for evidence tampering in an unrelated case. During trial, Brown sought to cross-examine Johnson about the investigation under Rule 404(b) and Rule 608(a) to show Johnson had a bias or prejudice in favor of the State. *See* TEX. R. EVID. 404(b), 608(a). The trial court excluded the evidence. Brown preserved error by making a

bill of exception during which Johnson testified that a defense attorney in an unrelated methamphetamine case had alleged that Johnson planted the drugs on the defendant during a canine search; the Bandera County District Attorney's office investigated the allegation; the allegation was held to be "unfounded," and the investigation was closed; the possession charge against that defendant was ultimately dismissed, but Johnson was unaware if the dismissal was due to the allegation of evidence tampering.

On appeal, Brown relies on *Coleman v. State*, in which the court held it was error to preclude a defendant from introducing evidence showing a prior antagonistic relationship between him and the police officers who he contended had planted a trace amount of cocaine on him. *Coleman v. State*, 545 S.W.2d 831, 834-35 (Tex. Crim. App. 1977). In support of his argument that exclusion of the investigation of Johnson was error, Brown quotes the statement made in *Coleman*, that, "… (A)ny **fact** and every fact going or tending to show mental bias, interests, prejudice, or any other motive … which, fairly considered and construed, might even [r]emotely tend to affect his credibility, should (be) admitted." *Id.* at 834 (quoting *Green v. State*, 54 Tex. Crim. 3, 111 S.W. 933, 935 (1908)) (emphasis added). *Coleman* is distinguishable because in that case the proffered evidence was of several prior antagonistic interactions between Coleman and the same officers involved in his current case. *Coleman*, 545 S.W.2d at 833-34 (numerous prior complaints had been filed by the Killeen police officers against Coleman and then dismissed, one of the officers had admitted throwing a snake into Coleman's car, several of the officers had thrown a bomb under Coleman's car which blew up with sufficient force to knock the hubcaps off the car parked next to his, three of the police officers had previously transported Coleman out into the country and pointed

a shotgun at his head in an attempt to make him confess to some other offense, and "there was a general conspiracy among members of the Killeen Police Department which had as its purpose getting appellant out of town."). Here, by contrast, the proffered evidence was merely that *allegations* of evidence planting were made against Johnson in a case unrelated to Brown's case, and the allegations were investigated and determined to be "unfounded." Unlike in *Coleman* where facts existed showing police misconduct, no evidence was offered which established a "fact" of prior misconduct by Johnson.

Further, *Coleman* was decided prior to the current Texas Rules of Evidence, which now control the admissibility of evidence. *See Hammer v. State,* 296 S.W.3d 555, 561 (Tex. Crim. App. 2009); *see also Leos v. State*, 883 S.W.2d 209, 211-12 (Tex. Crim. App. 1994). It is Brown's burden, as the proponent of the evidence, to establish its admissibility. *Hanley v. State*, 921 S.W.2d 904, 909 (Tex. App.—Waco 1996, pet. ref'd). Brown does not cite a specific rule of evidence in his brief to show the evidence should have been admitted, although he referred to Rules 404(b) and 608 in the trial court. Under Rule 608, specific instances of conduct for the purpose of attacking a witness's credibility, other than conviction of a crime, may not be inquired into on cross-examination nor proven by extrinsic evidence. TEX. R. EVID. 608(b). However, "there is an important distinction between an attack on the general credibility of a witness and a more particular attack on credibility that reveals "'possible biases, prejudices, or ulterior motives of the witness as they may relate directly to issues or personalities in the case at hand.'" *Hammer*, 296 S.W.3d at 562 (quoting *Davis v. Alaska*, 415 U.S. 308, 316 (1974)). Thus, the Rules of Evidence permit a witness to be cross-examined on specific instances of conduct when they are used to establish his specific bias, self-

interest, or motive for testifying.  TEX. R. EVID. 613(b); *Hammer*, 296 S.W.3d at 563 (also noting that Texas Rule of Evidence 404(b) permits a defendant to offer evidence of other acts of misconduct to establish a witness's motive for performing an act such as making a false allegation against the defendant).

The trial court has discretion to limit a defendant's right to present impeachment evidence, however, and may exclude such evidence to prevent confusion of the issues, harassment, or the admissibility of highly prejudicial, irrelevant, or marginally relevant evidence  *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1991) (in determining relevance, trial court must conclude the evidence tends to serve some purpose other than character conformity to make the existence of a fact of consequence more or less probable than it would be without the evidence). Here, the proffered evidence of mere allegations of evidence tampering against Johnson, which allegations were found to be meritless, did not have any probative value in impeaching Johnson's credibility. *See Lopez v. State*, 18 S.W.3d 220, 226 (Tex. Crim. App. 2000) ("Without proof that the prior allegation was false or that the two accusations were similar, the evidence fails to have any probative value in impeaching [complainant's] credibility in this case. For these same reasons, the risk that this evidence would unduly prejudice and confuse the jury was high."). Accordingly, the trial court did not abuse its discretion in excluding the evidence. *See* TEX. R. EVID. 403; *Montgomery*, 810 S.W.2d at 391.

## CONCLUSION

Based on the foregoing analysis, we affirm the judgment of the trial court.


Phylis J. Speedlin, Justice

DO NOT PUBLISH