**Robert Nicholas ANGLETON, Appellant,**

v.

**The STATE of Texas.**

No. 1536–97.

Court of Criminal Appeals of Texas, En Banc.

May 27, 1998.

Stanley G. Schneider, Houston, for appellant.

Alan Curry, Assistant District Attorney, Houston, Matthew Paul, State's Attorney, Austin, for State.

## OPINION ON STATE'S PETITION FOR DISCRETIONARY REVIEW

KELLER, Judge, delivered the opinion of the Court in which McCORMICK, Presiding Judge, and MANSFIELD, HOLLAND and WOMACK, Judges, joined.

Appellant has been charged with capital murder. The trial court denied bail, and appellant appealed. The Court of Appeals concluded that the State had failed to show "proof evident" of appellant's guilt of capital murder; consequently, the trial court was ordered to set a reasonable bail. *See Angleton v. State*, 955 S.W.2d 655, 659–660 (Tex. App.—Houston [14th] 1997)(lead opinion). *See also* Tex. Const., Article 1 § 11; Texas Code of Criminal Procedure, Article 16.15. In support of its holding that proof was not evident, the Court of Appeals found that an audio tape offered into evidence by the State had not been properly authenticated. *Angleton*, 955 S.W.2d at 659. In its petitions for discretionary review, the State contends that the Court of Appeals erred with regard to the authentication issue.[1] We agree.[2]

On April 16, 1997, the police found Doris Angleton, appellant's wife, dead in her home from a gunshot wound. There were no signs of forced entry at the scene. On April 28, appellant implicated his brother, Roger Angleton, as possibly being involved in the crime. On July 17, Roger was arrested in Las Vegas, Nevada on an arrest warrant out of California. Subsequently, the Houston police obtained a court order, traveled to Las Vegas, and recovered property found in Roger's briefcase. Among the property found in the briefcase was an audio tape.

An "enhanced" copy of the audio tape was introduced into evidence, over objection, at the bail hearing. Sergeant David Ferguson testified that he had listened to both the originial and enhanced versions of the tape. He explained that the enhancement merely reduced the background noise:

[DEFENSE COUNSEL]: Are there things on the enhanced version that you can hear that you can't hear on the other version, that are audible on the enhanced version that are not audible on the other version?

[FERGUSON]: No sir, I wouldn't—I wouldn't say that.

[DEFENSE COUNSEL]: You don't— well, can you—do you know?

[FERGUSON]: Maybe the background, some of the background noises.

[DEFENSE COUNSEL]: Don't speculate with me. Did—there must have been a reason for enhancement. Was that reason to bring up things that perhaps were not audible on the original?

[FERGUSON]: That was to make the, I guess the parts of the conversation more audible, more—more clear so that you could understand what was being said.

Ferguson admitted that he had no knowledge of the procedures followed in making the enhancement.

Ferguson testified that the recording was a conversation between Roger and appellant. Ferguson explained that he recognized the voices on the tape because he had spoken with both persons on several occasions. He further testified that he had spoken with appellant three times in person and three or four times on the telephone and that he had no doubt in his mind about his identification of appellant's voice on the tape.

The tape involves two men discussing the planned murder of a woman. The plan included disarming the house alarm using code 00032. Appellant admitted to the police that 00032 was the alarm code for his home.

Each of the three judges on the Court of Appeals panel authored an opinion. The "lead" opinion, by Chief Justice Murphy, held that "[t]he State was required to furnish testimony of a witness who could verify the tape was what the State claimed it to be" and that the State had failed to do so. *Id.* Ac-

---

1. This ground is contained in petitions from the Harris County District Attorney's Office and the State Prosecuting Attorney's Office.

2. We also granted a second ground for review, contained in the District Attorney's petition, regarding the proof evident issue as a whole. We dismiss that ground without prejudice.

cording to the lead opinion, the State had failed to do so because (1) Ferguson admitted that he did not have personal knowledge of where, how, when, or who made the tape recording, (2) he could not swear that the tape was an accurate recording of the conversation it purported to represent, (3) he could not testify as to the accuracy of the equipment that made the recording, and (4) he offered no information about the tape other than that it was an "enhanced" copy of the audio tape found in Roger's briefcase. *Id.*. The Court of Appeals implicitly held that the above reasons showed a failure of proof of the authentication requirements contained in Tex.R.Crim. Evid. 901(b)(1) and *Kephart v. State*, 875 S.W.2d 319 (Tex.Crim.App. 1994). *Angleton*, 955 S.W.2d at 659.

Justice Hudson authored a dissenting opinion in which he argued that *Kephart* should not be interpreted as holding "that the proponent can never authenticate a tape recording without the testimony of a sponsoring witness who is either (1) the maker of the tape or (2) was otherwise a participant in the recorded conversation." *Angleton*, 955 S.W.2d at 661 (Hudson, J. dissenting). Instead, Justice Hudson contended that the tape recording could be authenticated under other provisions of Rule 901 that do not require the testimony of a witness with knowledge. *Id.* at 661–662. He found that the recording was sufficiently authenticated by circumstantial evidence. *Id.* at 662.

In a concurring opinion, Justice Fowler agreed with the reasoning of the dissent but felt constrained to join the lead opinion because of this Court's decision in *Kephart*. *Angleton*, 664–665 (Fowler J, concurring). Justice Fowler contended that *Kephart* restricts authentication of a tape to "someone with personal knowledge of where or when the tape was made." 955 S.W.2d at 664–665.

The authentication requirement for admissibility "is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." Rule 901(a). Rule 901(b) provides a nonexclusive list of methods for authenticating evidence. Relevant to the present case are the following:

(1) *Testimony of Witness With Knowledge.* Testimony that a matter is what it is claimed to be.

. . . .

(4) *Distinctive Characteristics and the Like.* Appearance, contents, substance, internal patterns, or other distinctive characteristics, taken in conjunction with circumstances.

. . . . .

(5) *Voice Identification.* Identification of a voice, whether heard firsthand or through mechanical or electronic transmission or recording by opinion based upon hearing the voice at any time under circumstances connecting it with the alleged speaker.

Rule 901(b)(selected portions).

██ The standard of review for a trial court's ruling under one of the rules of evidence is abuse of discretion. *Guzman v. State*, 955 S.W.2d 85, 89 (Tex.Crim.App. 1997). At least under a straightforward reading of Rule 901(a) and the three illustrations set out above, the trial court did not abuse its discretion under the present record.

The State offered the audio tape as an accurate copy of a recording of a conversation between appellant and his brother Roger. The authentication requirements of Rule 901 would be satisfied by evidence sufficient to support a finding to that effect. Thus, *in this case* the authentication question has three parts: (1) whether the "enhanced" copy accurately depicts the contents of the original tape, (2) whether the voices on the tape are those of Roger and appellant, and (3) whether the depiction of the conversation on the tape as a continuous conversation between the participants is accurate(i.e. the conversation on the tape is not the result of splicing or some other alteration). The three illustrations of authentication all play a role in resolving this three-part authentication question.[3]

---

3. Judge Meyers construes our observation here as establishing a "three-part test." On the contrary, we merely observe that the authetication question in the present case appears to implicate three of the examples of authentication at three different levels. Nothing in this opinion should be construed as limiting the ability of parties to

■ Part one of the authentication question is proven through illustration (1). Sergeant Ferguson testified that he listened to both the original and enhanced tapes and the enhanced tape merely reduced background noise; no part of the conversation was audible on the enhanced version that was not also audible on the original. Hence, as to whether the tape accurately depicted the contents of the original, Ferguson's testimony was that of a witness with knowledge. Having listened to both tapes, he could testify that the enhanced tape was an accurate copy of the relevant contents of the original.

Part two of the authentication question is proven through illustration (5). Ferguson identified the voices on the tape as those of Roger and appellant. Ferguson was qualified to make such an identification because he had carried on conversations with both men on several occasions.

Part three of the authentication question is proven through illustration (4). The content of the tape supports its authenticity. Appellant and Roger's voices were identified as being on the tape. There is no evidence that the tape contained any pauses or breaks in the recording. While the recording is difficult to understand and even unintelligible in some places, nevertheless the recording contains periods of cohesive, coherent conversation. Appellant and Roger discussed using a gun to kill appellant's wife. And the tape contained discussion regarding the alarm code to appellant's home and the arming and disarming of that alarm code to further the planned murder. Moreover, the alarm code to one's home is not the kind of information that tends to be given out casually. While giving an alarm code to a relative may not seem especially strange in and of itself, such information is nevertheless quite sensitive, and the trial court was free to draw an incriminating inference from a non-household member's possession of such information. This seems especially true in the present case, where appellant subsequently implicated his brother in the crime—suggesting that Roger was not the kind of person to whom one would give one's home alarm code. Further, the circumstances under which the tape establish authentication in accordance with the

was obtained also support a finding that it is authentic. The tape was found in Roger's possession in a suitcase during a search conducted by the police pursuant to a warrant. It was neither created by law enforcement personnel nor was it voluntarily released to them. That the tape was essentially wrested from Roger's control is some evidence that the tape was not a fraudulent composition designed to frame appellant.

In addition, the above analysis is consistent with treatment of this issue in the federal courts. Federal courts addressing the issue have consistently held that the government does not have to prove when, where, how, and by whom tape recordings were made, when those recordings were recovered from the defendant or an alleged co-defendant, were not created as a result of government involvement, were not tampered with, and the defendant is identified as a speaker on the tape. *United States v. Matta–Ballesteros*, 71 F.3d 754, 769 (9th Cir.1995), *cert. denied*, U.S. , — U.S. ——, 117 S.Ct. 965, 136 L.Ed.2d 850 (1997)(audio tapes obtained from codefendant); *United States v. King*, 834 F.2d 109, 114 (6th Cir.1987), *cert. denied*, 485 U.S. 1022, 108 S.Ct. 1576, 99 L.Ed.2d 891 (1988)(tape recording found at bookmaking site); *United States v. Fuller*, 441 F.2d 755, 762 (4th Cir.), *cert. denied*, 404 U.S. 830, 92 S.Ct. 73, 92 S.Ct. 74 (1971). *See also United States v. Kandiel*, 865 F.2d 967, 974 (8th Cir.1989)(strict compliance with requirements found in *United States v. McMillan*, 508 F.2d 101 (8th Cir.1974), *cert. denied*, 421 U.S. 916, 95 S.Ct. 1577, 43 L.Ed.2d 782 (1975) unnecessary where tapes were found in the defendant's possession). Traditionally, we have looked to interpretations of the Federal Rules of Evidence for guidance in construing our own Rules. *Ludwig v. State*, 931 S.W.2d 239, 241 (Tex.Crim.App.1996)(citing cases).

Having found that the plain language of Rule 901 and federal caselaw support finding the evidence admissible, we finally turn to the Court of Appeals' contention that our decision in *Kephart* holds to the contrary. For authentication, pre-rules caselaw required a party to offer the testimony of a plain language of Rule 901.

witness with knowledge or to satisfy a seven-pronged test set out in *Edwards v. State*, 551 S.W.2d 731 (Tex.Crim.App.1977). *Kephart*, 875 S.W.2d at 320. *Kephart* suggested that Rule 901 was consistent with the pre-rules authentication requirements. We hold that suggestion to be in error. While the *Edwards* test and other pre-rules caselaw may often yield the same results and may sometimes employ similar reasoning to that required under Rule 901, that is not invariably the case. And, we find that attempting to cling to the *Edwards* test after the enactment of Rule 901 will result in unwarranted confusion for practitioners, trial courts, and appellate courts. Rule 901 is straightforward, containing clear language and understandable illustrations. *Kephart* is overruled.

Hence, we conclude that the trial court did not abuse its discretion in ruling that the audio tape was properly authenticated. We reverse the judgment of the Court of Appeals and remand the case to that Court to reconsider the issue of proof evident.[4]

MEYERS, J., filed a dissenting opinion in which BAIRD, OVERSTREET and PRICE, JJ., joined.

MEYERS, Judge, dissenting.

I agree with the majority that there are problems with this Court's opinion in *Kephart*. But having disavowed that opinion, we ought to remand this case to the Court of Appeals to reconsider the authenticity of the evidence.

Rule of Criminal Evidence 901 provides in part:

(a) **General Provision.** The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims.

Rule 901 also sets forth a number of "examples" "by way of illustration only, and not by way of limitation[,]" as to how a piece of evidence might be authenticated, including the following:

(1) *Testimony of Witness with Knowledge.* Testimony that a matter is what it is claimed to be.

In *Kephart* we transformed this single "example" into a "requirement" for authenticating a video tape recording. This error derived from the fact such a requirement existed under pre-Rules caselaw and the Court mistakenly concluded that Rule 901 is consistent with pre-Rules caselaw:

... it is clear that our pre-rules caselaw regarding authentication of video tapes required that either the [seven pronged] *Edwards* test be satisfied or a sponsoring witness have knowledge of the scene depicted. [citations omitted] Keeping these principles in mind we hold that Rule 901 is consistent with our pre-Rules interpretations requiring authentication of video tapes.

*Kephart*, 875 S.W.2d at 322. Thus, we held the State failed to authenticate the tape because the testifying officer "did not know when the tape had been made ... had no personal knowledge of where or when the tape had been made, [and] could not [ ] state that the tape accurately represented the actual scene or event at the time it occurred." *Id.* at 322–23.

Following *Kephart*, the Court of Appeals held Rule 901 "*requires* the sponsoring witness to have knowledge that the evidence is what its proponent says it is." *Angleton v. State*, 955 S.W.2d 655, 659 (Tex.App.1997) (emphasis added). Thus, the court concluded the tape was not properly authenticated because the sponsoring witness "admitted" it was not the original, was unable to provide "any information as to how the offered tape differed from the original recording other than it had been 'enhanced[,]' " "admitted he

4. Judge Meyers contends we should not have conducted the authentication analysis ourselves but should have simply overruled *Kephart* and remanded for the Court of Appeals to conduct the evidentiary analysis. However, the authentication analysis in the present case is a good illustration of why *Kephart* was wrongly decided.

That analysis clearly shows that, contrary to our pronouncement in *Kephart*, the *Edwards* test is not in fact the equivalent of the authentication requirement of Rule 901. The Court of Appeals is, of course, free to assess the weight of such evidence, in the first instance, in its proof evident analysis on remand.

did not have personal knowledge of where, how, when or who made the recording[,]" and "could neither swear the tape was an accurate recording of the conversation it purported to represent, nor could he testify as to the accuracy of the equipment that made the recording." The Court held

> The State was required to furnish testimony of a witness who could verify the tape was what the State claimed it to be. In the absence of such evidence, we find the State failed to lay the proper predicate for the·court to admit the tape into evidence.

*Id.* at 659. The two other justices on the panel wrote separately, opining that *Kephart* wrongly limited Rule 901 by suggesting that a tape recording can *only* be authenticated by the testimony of one who either made the tape or was a participant.

And they are right. Rule 901 imposes no such requirement; *Kephart* was wrong to indicate otherwise. This case ought to· be remanded to the Court of Appeals for reconsideration of the issue, *sans Kephart*—at least part of it.

Not all of *Kephart* is wrong, however, as that opinion did well to point out that authenticity is, at its heart, a question of relevance.[1] *Kephart*, 875 S.W.2d at 321. This elemental, yet essential notion is explained by commentators Goode, Wellborn and Sharlot:

> "Authentication and identification," according to the drafters of the federal rules, "represent a special aspect of relevancy." They explain: ·"Thus a telephone conversation may be irrelevant because on an unrelated topic or because the speaker is not identified...." As the example shows, the problem of authentication of identification is not confined to documentary or real evidence. It arises whenever the relevancy of any evidence depends upon its·identity, source, or connection with a particular person, place, thing or event. "The foundation on which the necessity of authentication rests," wrote Wigmore, "is not any artificial principle of evidence, but an *inherent logical necessity*." ...
>
> When real evidence is offered, often its condition as well as its identity is important. When this is so, a proper foundation must include evidence· that the item is in substantially the same condition when presented as at the legally material time, e.g., the time of the accident, the time of first discovery, etc.... It is not required, however, that all possibility of tampering or adulteration be eliminated. Moreover, even·if a change in·the condition of an item has occurred, it is not necessarily thereby rendered inadmissible. So long as the probative value of the item, despite the change, outweighs the danger of misleading the jury, it will still be admissible, and the change in its condition will be a matter going only to its weight as evidence.

2 STEVEN GOODE ET AL., TEXAS PRACTICE, GUIDE TO TEXAS RULES OF EVIDENCE: CIVIL AND CRIMINAL § 901.1, at 191–92 (2nd ed.1993). Further, the question of the authenticity of a piece of evidence is one of "conditional relevancy" which is subject to a "prima facie case" determination by the trial judge, pursuant to Rule of Criminal Evidence 104(b). *Id.* at 192–93.

---

1. Thus, despite other flaws in its analysis, as discussed above, *Kephart* properly concluded the videotape at issue was simply not shown to be relevant. There, the defendant was indicted for possession of cocaine. The State sought to introduce a videotape which showed the defendant and others over what appeared to be the course of an evening. Through-out the tape, the defendant became increasingly under the influence of drugs or alcohol, and is finally shown seated at a table on which there is a white substance and a baggy containing what appeared to be marijuana. There were numerous pauses and breaks in the tape. The defendant objected to the tape as not properly authenticated. We stated that "the video tape's relevancy was conditioned upon proper authentication because its relevance depended on its connection with Appellant and her alleged involvement with drugs *at her home on the night in question*." *Id.* at 322 (emphasis added). The State failed to establish the relevance of the tape because the testifying officer "did not know when the tape had been made ... had no personal knowledge of where or when the tape had been made, [and] could not [ ] state that the tape accurately represented the actual scene or event at the time it occurred." *Id.* at 322–23. Nothing else showed those critical connecting facts which would render the tape relevant. A tape of the· defendant on a random night at a random location would have no relevance to the question of whether the defendant possessed drugs on a·particular night at a particular location.

I point this out because the majority, despite its 9 page opinion, never mentions relevance; and, it is integral to an understanding of authentication.[2] In the instant case, the question boils down to whether the State, as proponent of the audio tape, has authenticated it by establishing its relevance to the case by any number of methods, some of which are described in Rule 901.

The Court of Appeals has reviewed the record and is infinitely more familiar with the facts of this case than this Court is or ought to be at this point. We should remand this case to them to reconsider the trial court's ruling as to the authenticity of the tape without the constraints imposed under Rule 901 by *Kephart* and,[3] if necessary, assess its weight in connection with the larger question of proof evident.

BAIRD, OVERSTREET and PRICE, JJ., join.

---

2. The majority today decides, and I think rightly, that we ought not continue to insist on application of the *Edwards* test when no such defined inquiry is required under the plain language of Rule 901. *Majority opinion* at 8–9. I view it as odd, then, that the majority sets out a "three part" test it says applies in answering the authentication question in this case. *Majority opinion* at 5. Has the *Edwards* test simply been replaced with the *Angleton* test? Fashioning a restrictive "test" for application of Rule 901 is not necessary in this case or particularly helpful for other cases. Nothing in the Rule itself requires any such inquiry. The overriding inquiry is one of relevance. While the matters included in the majority's "three part" test might enter into such inquiry, a Rule 901 question should not be narrowed to a fixed number of inflexible inquiries.

3. The majority says the standard of review "for a trial court's ruling under one of the rules of evidence is abuse of discretion." *Majority opinion* at 5 (citing *Guzman v. State*, 955 S.W.2d 85, 89 (Tex.Crim.App.1997)). While I agree this ought to be the standard and I realize there is language in *Guzman* to this effect, it does not square with the rest of the scheme established in *Guzman*. In *Guzman*, the Court held that "application of law to fact questions" that do not turn on an evaluation of credibility and demeanor should be reviewed *de novo* because "the trial court 'is not in an appreciably better position' than the appellate court to decide the issue." *Guzman*, 955 S.W.2d at 89. The Court also said

> Our decision in this case in no way affects this Court's holdings in cases such as *Montgomery*. *Montgomery* sets out the standard by which appellate courts review trial courts' evidentiary rulings which is an abuse of discretion standard. *An appellate court's review of a trial court's evidentiary rulings generally does not involve an "application of law to fact question" or a "mixed question of law and fact."*
> *Id.* (emphasis added).

Since appellate review of a trial court's evidentiary rulings does not involve an application of law to fact question, then evidentiary rulings must be either a pure question of law or a pure question of historical fact. *See Villarreal v. State*, 935 S.W.2d 134, 145 (Tex.Crim.App.1996)(Keller, J., concurring)(appellate courts generally review two types of questions—questions of law which are reviewed *de novo* and questions of fact which are reviewed deferentially). Appellate courts need not defer to trial courts as to questions of law and as to pure questions of fact, appellate courts give almost total deference. According to this scheme, evidentiary rulings must be purely questions of fact.

But while questions of evidence necessarily involve historical fact, they also involve rules. Thus, it is most logical to view an evidentiary ruling as a mixed question of law and fact—that is, application of the rule of evidence to the particular piece evidence at issue. According to the scheme set out in *Guzman*, as a mixed question of law and fact that does not turn largely on weight and credibility, an evidentiary ruling ought to be reviewed *de novo*. But *Guzman* says these types of issues should be reviewed deferentially. This all makes for a lot of confusion.

The inconsistency can be logically accounted for, although as is increasingly the case, it is not. Certain application of law to fact questions of constitutional dimension ought to be subject to *de novo* review because, it might be argued, there is a need for consistency and control in application of the law in these matters. *Guzman*, 955 S.W.2d at 87 ("the legal rules for probable cause and reasonable suspicion acquire content only through application. Independent review is therefore necessary if appellate courts are to maintain control of, and to clarify the legal principles" quoting *Ornelas v. United States*, 517 U.S. 690, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996)). There is not the same need with respect to evidentiary rulings involving specific pieces of evidence in individual cases.