DARNELL P. BATISTE






COURT OF APPEALS
SECOND DISTRICT OF TEXAS
FORT WORTH
NO. 2-02-063-CR
NO. 2-02-064-CR
 
DARNELL P. BATISTE
                                                           APPELLANT
V.
THE STATE OF TEXAS
                                                           STATE
------------
FROM CRIMINAL DISTRICT COURT NO. 3 OF TARRANT COUNTY
------------
MEMORANDUM OPINION(1)
------------
The trial court found appellant Darnell P. Batiste guilty of aggravated
robbery with a deadly weapon and robbery by threats and sentenced him to
twenty-five and twenty years' imprisonment, respectively, with the sentences to
run concurrently. In one point on appeal, appellant contends that in denying his
motion to suppress the trial court "improperly applied the 'inevitable
discovery' doctrine to allow illegally seized evidence to be used against
[him]." We affirm.
On August 13, 2001, Arlington Police Officer Greg Wilkinson, while on
burglary detail in an area known for previous burglaries, observed appellant
walk into a "Game Stop" store, walk around the inside, and then come
back out, all in a short amount of time. "Game Stop" is a chain store,
and another Game Stop store had been robbed on August 8. Officer Wilkinson then
saw appellant walk back to the car his girlfriend, Shayla Pierce, was sitting
in, take off his shirt, and put it in the trunk. Appellant was wearing another
shirt underneath, and Officer Wilkinson noticed that appellant was also wearing
two pairs of pants.
After observing this behavior, Officer Wilkinson dispatched Officer Nathaniel
Harder to the scene. When Officer Harder pulled up, he saw appellant look at the
patrol car and walk quickly back into the store. After Officer Harder drove away
from the premises, appellant came back out of the store and got into Pierce's
car, and the car drove away.
Officer Wilkinson followed Pierce and appellant to an apartment complex
nearby, where they entered the parking area and backed into a parking space.
While following the car, Officer Wilkinson noticed that appellant continually
turned his head to look back and that he repeatedly moved his hands on either
side of him. Once the car stopped in the apartment complex, Officer Wilkinson
went to the driver's side of the car and noticed a pair of latex, surgical-type
gloves on the floor. He also saw appellant moving his hand furtively throughout
the car.
Officer Wilkinson asked Pierce for some identification, and she complied.
During this time, appellant continued making nervous gestures with his hands as
if trying to reach for something under or between the seats. Officer Wilkinson
asked appellant to keep his hands where he could see them and asked for his
identification, which appellant offered to get out of the trunk. Officer
Wilkinson then went to the passenger side to talk to appellant. Once Officer
Wilkinson reached the passenger side of the car, he noticed that the latex
gloves had disappeared and that appellant continued to move his hands about the
car, not keeping them in plain sight as requested. Fearing for his safety and
suspicious of the movements, Officer Wilkinson then drew his pistol, pointed it
at appellant, and asked him to put his hands on the dashboard.
After Officer Harder arrived at the scene, Officer Wilkinson asked appellant
to open the car door. Appellant complied with the request, and when he opened
the door, a handgun fell out of the car and onto the ground. Officer Wilkinson
initially arrested appellant for unlawful carrying of a weapon and later also
arrested him on an outstanding warrant.
Pierce, the owner of the car, signed a consent to search form, which gave the
police permission to inventory the car's contents. In the trunk, the police
found a homemade mask, duct tape, latex gloves, and a knife. The objects found
in the trunk were similar to the objects used in a previous Game Stop robbery.
At the jail, Detective LeNoir questioned appellant about the robbery. Before
questioning, LeNoir read appellant his Miranda rights, and appellant
orally confessed to the robbery and supplied a DNA sample. DNA testing of blood
collected from the robbery and appellant's saliva later confirmed that appellant
was the robber. Appellant also dictated a five-page written confession that he
read, made changes to, and signed. The confession form had Miranda
warnings written on it, which LeNoir read to appellant and appellant read for
himself and admitted that he understood.
Appellant filed a motion to suppress, challenging the legality of his arrest
and requesting that all evidence obtained after the arrest be suppressed. After
a hearing the trial court denied the motion. In its findings of fact and
conclusions of law, the court concluded that:

 When [Officer Wilkinson] asked [appellant] his name and for his
 identification, it's inevitable, even if the gun didn't fall out, that the
 identification of [appellant] is going to be cause to arrest him due to his
 outstanding warrant. When [appellant] was asked to step out of the car, which
 the officer was reasonable in asking for, and the gun fell out, it then
 becomes inevitable that [appellant] is going to be place[d] under arrest. So
 there is no Fourth Amendment violation.

Appellant contends that the trial court improperly applied the
"inevitable discovery doctrine" when it concluded that the
"evidence would be inevitably discovered when Appellant was arrested on the
outstanding warrant" because there is no showing that appellant was
arrested on the warrant and because the warrant was not supported by an
affidavit establishing probable cause. Appellant does not challenge Officer
Wilkinson's initial questioning of him, nor does he challenge Officer
Wilkinson's request for him to get out of the car. Finally, appellant does not
challenge the findings of fact or the other conclusion reached by the trial
court in denying the motion to suppress that when "the gun fell out, it
then becomes inevitable that [appellant] is going to be place[d] under
arrest."
When reviewing a trial court's decision to admit or exclude evidence, an
appellate court must afford a trial court great discretion. Montgomery v.
State, 810 S.W.2d 372, 378-79 (Tex. Crim. App. 1990). Thus, we review a
trial court's ruling on the admissibility of evidence under an abuse of
discretion standard. Angleton v. State, 971 S.W.2d 65, 67 (Tex. Crim.
App. 1998). The trial court's ruling will be upheld as long as it stays within
the "zone of reasonable disagreement." Weatherred v.
State, 15 S.W.3d 540, 542 (Tex. Crim. App. 2000). If the trial court's
decision is correct on any theory of law applicable to the case, it will be
sustained. Romero v. State, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990).
This principle holds true even when the trial court gives the wrong reason for
its decision, especially with regard to the admission of evidence. Id.
at 543-44.
Because appellant does not challenge the trial court's conclusion that
Officer Wilkinson was reasonable in asking him to step out of the car, we will
not address whether that request was constitutionally permissible. After asking
appellant to step out of the car, however, Officer Wilkinson obtained probable
cause to arrest him for unlawfully carrying a weapon when the gun fell out of
the car.(2)  See Tex. Penal Code
Ann. § 46.02 (Vernon 2003) (setting forth elements of unlawful carrying of
weapon); Starlling v. State, 743 S.W.2d 767, 771 (Tex. App.--Fort Worth
1988, pet. ref'd) (holding warrantless arrest valid where police had probable
cause to believe defendant was unlawfully in possession of weapon). Thus, even
if the trial court incorrectly concluded that appellant's arrest was inevitable
upon Officer Wilkinson identifying him, it is not necessary for us to rule on
that issue because the trial court's order is correct under another theory. Romero,
800 S.W.2d at 543. As a result the trial court did not err in denying the motion
to suppress based on the challenge to the lawfulness of the arrest. We overrule
appellant's sole point.
We affirm the trial court's judgment.
 
                                                           SAM
J. DAY
                                                           JUSTICE

PANEL A: CAYCE, C.J.; DAY and DAUPHINOT, JJ.
DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: June 26, 2003

1. See Tex. R. App. P. 47.4.
2. Appellant testified at the motion to suppress hearing
that he did not have a license to carry the gun.