IN THE COURT OF CRIMINAL APPEALS


OF TEXAS






NO. 74,253






WILLIAM SPEER, Appellant



v.



THE STATE OF TEXAS





ON DIRECT APPEAL


FROM BOWIE COUNTY






 Cochran, J., delivered the opinion of the Court.


O P I N I O N



 In October 2001, a jury convicted appellant of capital murder pursuant to Section
19.03(a)(6), Texas Penal Code, which makes it a capital offense for a person to knowingly
or intentionally murder another person while the defendant is incarcerated in a penal
institution for a separate murder or capital murder conviction. Pursuant to the jury's
answers to the special issues set forth in Texas Code of Criminal Procedure Article
37.071, §§ 2(b) and 2(e), the trial judge sentenced appellant to death. Art. 37.071, § 2(g). (1) 
Direct appeal to this Court is automatic. Art. 37.071, § 2(h). Appellant raises two points
of error. We affirm. 

ADMISSION OF EVIDENCE


 In his first point of error, appellant claims that the trial court improperly permitted
the State to introduce into evidence certain handwritten prison notes allegedly authored by
appellant. Appellant claims that the court erred in allowing the notes because they had not
been properly authenticated.

 Texas Rule of Evidence 901(a) provides that the authentication or identification of a
piece of evidence is a condition precedent to the admissibility of that evidence. This
requirement "is satisfied by evidence sufficient to support a finding that the matter in
question is what its proponent claims." Tex. R. Evid. 901(a); see also Angleton v. State,
971 S.W.2d 65, 67 (Tex. Crim. App. 1998). The problem of authentication "arises
whenever the relevancy of any evidence depends upon its identity, source, or connection
with a particular person, place, thing, or event." 2 Steven Goode et al., Texas Practice: 
Guide to Texas Rules of Evidence: Civil and Criminal § 901.1 at 191-92 (2d
ed.1993). One method of proving who authored a letter is by presenting non-expert
opinion testimony as to the genuineness of the handwriting. Tex. R. Evid. 901(b)(2). The
opinion must be based upon a familiarity with the handwriting that was not acquired for
purposes of litigation. Id. 

 Appellant concedes that the State "technically met the language of the rule" when it
presented the testimony of two inmate accomplices and other inmates who claimed to be
familiar with appellant's handwriting and signature and who identified the writing in the
notes as appellant's. Appellant argues, however, that the trial judge abused his discretion
with regard to his gatekeeping function when he "accept[ed] the word of the criminals in
this case" because the law recognizes that testimony given by criminals is "inherently
unreliable." Appellant states that the trial court "seems to have been more concerned about
whether the prosecutor asked the right question rather than whether the persons answering
were credible and disinterested enough to give reliable answers." 

 There is no "best witness" rule which would require the trial court to permit only
those witnesses whom it finds credible and sufficiently disinterested to testify before the
jury. The competency of a witness is a question for the judge, but the credibility of the
witness is a question for the jury. It is the jury that is the lie detector in the courtroom. 
See United States v. Barnard, 490 F.2d 907, 912 (9th Cir.1973). Further, while appellant
argues that the State's inmate witnesses were without credibility, he himself called an
inmate witness at trial who testified that he was familiar with appellant's handwriting and
identified the handwriting in the complained-of notes as appellant's. This witness
attempted to persuade the jury that although the notes were written by appellant, the
substance of the notes was subterfuge.

 This Court has recognized that trial courts have broad discretion in their evidentiary
rulings and are usually in the best position to determine whether certain evidence should be
admitted or excluded. Guzman v. State, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). 
Because appellant's entire argument on this point rests on the credibility of witnesses, we
defer to the implied findings of the trial judge, and hold that he did not abuse his discretion
in determining that the notes were sufficiently authenticated to be admitted for the jury's
consideration. Point of error one is overruled.

SPEEDY TRIAL


 In his second point of error, appellant claims that he was "denied a speedy trial as
required by Article 28.061 and the Sixth and Fourteenth Amendments to the United States
Constitution." More specifically, appellant argues that he did not receive a "speedy
indictment"; that is, he was not indicted within the time frame set out in Article 32.01. (2) 
Therefore, he argues, the charges against him should have been dismissed, and, under the
dictates of the then-existing Article 28.061, the State should not be allowed to retry him. 
The dates of consequence are as follows:

July 11, 1997 Fellow inmate Gary Dickerson was murdered.


September 14, 1997 Appellant, who was in prison serving a life sentence for capital
murder, was removed from the general population and placed in
administrative segregation in part because he was suspected of
committing the murder. 


November 4, 1999 Appellant was indicted for capital murder.


March 31, 2000 Counsel was appointed for appellant on the capital murder
charge.


August 20, 2001 Counsel filed a motion to dismiss the prosecution for "Lack of
[a] Speedy Trial." In this motion, appellant complained about
the period of time between when he was placed in
administrative segregation and when he was indicted. 
Specifically, he complained that his indictment should be set
aside under Articles 28.061 and 32.01 because he was not
timely indicted by the State.


August 23, 2001 The court held a pre-trial hearing and the motion was denied.


October 15, 2001 Voir dire began in appellant's capital murder trial.


Appellant does not complain about the period of time between his indictment and the start
of his trial.

 We must reject appellant's claim for two reasons. 

 First, the version of Article 28.061 in existence at the time appellant committed this
capital murder offense does not bar further prosecution for a violation of the "speedy
indictment" statute. Prior to May 1997, Article 28.061 provided a bar to the further
prosecution of an offense that had been discharged due to the State's failure to indict the
defendant within the time limits set forth in Article 32.01. (3) However, effective May 26,
1997 (and before the commission of the instant offense), the Legislature deleted the
language in the statute specifically referring to a discharge under Article 32.01. The effect
of this change was that the State is no longer barred from prosecuting an offense even if it
has failed to timely indict a defendant under Article 32.01. Ex parte Seidel, 39 S.W.3d
221, 224 (Tex. Crim. App. 2001). Thus, contrary to appellant's assertion, Article 28.061 is
no longer "a viable enforcement tool" for Article 32.01.

 Second, appellant's argument incorrectly presupposes that Article 32.01 applies to
his situation. Article 32.01 provides that:

 When a defendant has been detained in custody or held to bail for his
appearance to answer any criminal accusation before the district court, the
prosecution, unless otherwise ordered by the court, for good cause shown,
supported by affidavit, shall be dismissed and the bail discharged, if
indictment or information be not presented against such defendant on or
before the last day of the next term of the court which is held after his
commitment or admission to bail or on or before the 180th day after the date
of commitment or admission to bail, whichever date is later.


By its operation, this statute prevents citizens from being held in jail or on bail for long
periods of time without being indicted. Ex parte Martin, 6 S.W.3d 524, 529 (Tex. Crim.
App. 1999). This concern does not exist when a defendant is already incarcerated on
convictions for other offenses. Munoz v. State, 996 S.W.2d 901, 904 (Tex. App.- Eastland
1999, no pet.); Anderson v. State, 986 S.W.2d 811, 813-14 (Tex. App.- Amarillo 1999,
pet. ref'd). 

 Appellant argues that he was in fact "detained in custody" for the purpose of Article
32.01 when he was placed in administrative segregation for murdering Dickerson. He
asserts that, although his status as a prisoner was not changed, he suffered a definite
qualitative difference in his commitment. In general population, he had a roommate, could
interact with other prisoners, and could typically come and go from his cell as he pleased. 
In administrative segregation, appellant was in solitary confinement, he had only one hour a
day of solitary recreation, and was shackled and escorted by guards when he left his cell. 

 Although it is true that prison authorities suspected appellant of having killed Gary
Dickerson, appellant was placed in administrative segregation for disciplinary purposes, not
because law enforcement authorities had detained him on a "criminal accusation before a
district court." Cf. Art. 32.01 (stating that its provisions apply to a person detained because
of a "criminal accusation before [a] district court.") The authorities at the Texas
Department of Criminal Justice are responsible for internal disciplinary procedures with
regard to prisoners, and the courts do not control their actions. See, e.g., Ex parte Brager,
704 S.W.2d 46 (Tex. Crim. App. 1986). An inmate placed in administrative segregation
may be placed there for a number of reasons, including his own safety, and may never be
formally charged with any criminal accusation. The mere fact that appellant was placed in
administrative segregation does not mean that he was "detained in custody...to answer any
criminal accusation before the district court" which would trigger the application of Article
32.01. Therefore, appellant's second point of error is overruled. 

 We affirm the judgment of the trial court. 


Delivered: October 8, 2003

En banc 

Do Not Publish

1. Unless otherwise indicated, this and all future references to Articles refer to the Code of
Criminal Procedure.
2. Appellant claims that Article 32.01 "is merely a mechanism for enforcing an accused's
constitutional rights." He does not otherwise make a separate constitutional claim; therefore, we will
not address one. Heitman v. State, 815 S.W.2d 681 (Tex. Crim. App. 1991). 
3. The pre-1997 version of Article 28.061 read:


 If a motion to set aside an indictment, information, or complaint for failure to provide a
speedy trial is sustained, the court shall discharge the defendant. A discharge under this
article or Article 32.01 of this code is a bar to any further prosecution for the offense
discharged and for any other offense arising out of the same transaction, other than an
offense of a higher grade that the attorney representing the state and prosecuting the
offense that was discharged does not have the primary duty to prosecute.


Art. 28.061 (Vernon 1995) (Emphasis added.).