# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

NO. 03-03-00279-CR
NO. 03-03-00280-CR
NO. 03-03-00281-CR

**Lemuel Thomas Patton, Appellant**

**v.**

**The State of Texas, Appellee**

**FROM THE DISTRICT COURT OF TRAVIS COUNTY, 331ST JUDICIAL DISTRICT
NOS. 9034037, 9034038 & 9034042, HONORABLE BOB PERKINS, JUDGE PRESIDING**

## M E M O R A N D U M   O P I N I O N

A jury found appellant Lemuel Thomas Patton guilty of robbery, aggravated robbery, and aggravated assault on a public servant. *See* Tex. Pen. Code Ann. § 22.02 (West Supp. 2004), §§ 29.02, .03 (West 2003). The jury assessed prison terms, enhanced by previous felony convictions, of forty, sixty, and fifty years, respectively. In five points of error, appellant contends the State made race-based jury strikes, an inadequately authenticated recording was admitted in evidence, and instructions on two lesser included offenses should have been given. We will affirm the convictions.

### *Factual Background*

Diana Soler was preparing to close the insurance office on South Congress Avenue where she was employed when appellant entered, pointed a pistol at her, and demanded money.

Soler gave appellant the office money bag. At about this time, Soler's husband arrived at the office to take her home. Appellant fled from the office and drove away in a green Ford.

Austin Police Officer Jessie Newhall was on patrol when he heard the report of the Soler robbery. Newhall spotted appellant in his green Ford, began to follow him, and then attempted to stop him. After Newhall activated his patrol car's emergency lights, he saw an object fly out of the Ford's window. Newhall later returned to this spot and recovered a pistol. Meanwhile, appellant did not stop and a high-speed chase ensued. By this time, appellant was driving west on Ben White Boulevard. When he attempted to turn onto Manchaca Road, appellant lost control of his car and crashed into some parked vehicles. He left his car, ran to the intersection, and entered an Isuzu Rodeo that was waiting for the light to change.

Susanne Marcus was driving the Isuzu. She testified that appellant entered through the passenger door. Appellant demanded that she leave the vehicle and pushed her out of the driver's door. Marcus heard gunshots as appellant drove off in her Isuzu.

Austin Police Officer Jason Bryant was also following appellant. When Bryant saw appellant get out of his car and begin running toward the intersection, Bryant left his patrol car and pursued appellant on foot. Bryant saw appellant force his way into the Isuzu. When Bryant reached the Isuzu, the driver's door was open. The officer attempted to grab appellant to pull him from the vehicle. Appellant turned the steering wheel sharply to the left and accelerated. Because he was standing on the left side of the Isuzu, Bryant was afraid that he would be run over. He unholstered his service revolver and fired four shots at appellant.

2

Despite being shot, appellant drove a short distance in the hijacked Isuzu, then fled on foot. Appellant was arrested after he forced his way into a residence and collapsed.

Appellant was convicted for the robbery of Marcus, the aggravated robbery of Soler, and the aggravated assault of Officer Bryant. He does not challenge the sufficiency of the evidence to sustain these convictions.

### *Lesser Included Offenses*

In his first two points of error, appellant contends the trial court erred in the robbery case by refusing to instruct the jury on the lesser included offenses of theft and unauthorized use of a vehicle. *See* Tex. Pen. Code Ann. § 31.03 (West Supp. 2004), § 31.07 (West 2003). A completed theft can be a lesser included offense of aggravated robbery. *Campbell v. State*, 571 S.W.2d 161, 162 (Tex. Crim. App. 1978). If the property stolen was a vehicle, unauthorized use of a vehicle can be a lesser included offense of both theft and aggravated robbery. *Griffin v. State*, 614 S.W.2d 155, 158 n.4 (Tex. Crim. App. 1981); *Neely v. State*, 571 S.W.2d 926, 928 (Tex. Crim. App. 1978).

Appellant urges that an issue as to his guilt of the lesser offenses was raised by the testimony of two defense witnesses, psychologist David Poole and psychiatrist Robert Cantu, regarding the "fight or flight syndrome." Poole described "fight or flight" as "a natural and almost visceral inclination when you are . . . afraid to try to resolve and remove yourself from the situation. It is a self-preserving impulse. Flight or fight means either you assault what you perceive to be scaring you or you run away." Cantu described "fight or flight" as "the way your body rallies in order to give you the best chance to escape a situation that the brain perceives as dangerous or

3

harmful." Both witnesses agreed that the fight or flight syndrome could arise or be triggered in the following hypothetical situation:

> Consider if you will, August 2002, in the immediate aftermath of an alleged aggravated robbery, subsequent to a high-speed car chase over three miles, subsequent to the — to a series of two or three automobile accidents culminating in a vehicle stopping in an intersection, after which the driver exits the car, enters into another car, and is somewhere in that sequence shot one to three or four times.[1]

Poole was shown the penal code definition of "intentional." *See* Tex. Pen. Code Ann. § 6.03(a) (West 2003). He testified that this mental state could be "influenced and modified" by the fight or flight syndrome. Poole clarified his position during cross-examination: "You know, we don't say that it removes the responsibility from people for criminal acts. All we are saying is that it influences people's judgment, this surge of adrenaline. That's all we're saying here." Cantu was also shown this definition and asked if "application of the fight or flight syndrome . . . influence[s] or impair[s] one's ability to engage in conduct based on conscious objective and desire." He answered, "It certainly can." He also answered affirmatively when asked if the fight or flight syndrome "can modify, influence, or impair one's ability to form the intent to do an act." Neither Poole nor Cantu expressed the opinion that appellant was, in fact, in the grip of "fight or flight" on the afternoon in question.

A defendant is entitled to an instruction on a lesser offense if it is included within the proof necessary to establish the charged offense and if there is evidence that would permit a rational

---

[1] We quote the question as it was presented to Cantu. Poole was asked a substantially identical question.

4

jury to believe that the defendant is guilty only of the lesser included offense. *Rousseau v. State*, 855 S.W.2d 666, 672 (Tex. Crim. App. 1993). Appellant urges that the testimony regarding the fight or flight syndrome raised an issue as to whether he was capable of forming the culpable mental state required to commit the alleged robbery of Susanne Marcus, and thus raised an issue as to whether he was guilty only of stealing Marcus's Isuzu or using the vehicle without her authority.

In the district court, appellant argued that based on the "fight or flight" testimony, the jury could find that he did not intentionally or knowingly threaten or place Marcus in fear of imminent bodily injury or death. He asked the court to give the jury these instructions:

> However, if you find from the evidence beyond a reasonable doubt that on or about August 5, 2002, in Travis County, Texas, the defendant committed theft of property and with intent to obtain and maintain control of said property, but you entertain a reasonable doubt as to whether the defendant intentionally and knowingly threatened or placed Susanne Marcus in fear of imminent bodily injury and death, then you will find the defendant guilty of Theft, and not of Robbery.

> Moreover, if you find from the evidence beyond a reasonable doubt that on or about August 5, 2002, the defendant intentionally and knowingly operated another's automobile without the effective consent of the owner, Susanne Marcus, but you entertain a reasonable doubt as to whether the defendant intentionally and knowingly, while in the course of committing theft of property and with intent to obtain and maintain control of said property, intentionally and knowingly threaten[ed] and place[d] Susanne Marcus in fear of imminent bodily injury and death, then you will find the defendant guilty of Unauthorized Use of a Motor Vehicle, and not of Robbery.

To be guilty of robbery, it was only necessary that appellant intentionally *or* knowingly place Marcus in fear of imminent injury or death in the course of committing theft. *See* Tex. Pen. Code Ann. § 29.02(a)(2); *and see Kitchens v. State*, 823 S.W.2d 256, 258 (Tex. Crim. App. 1991) (proper to

5

submit alternate theories of offense disjunctively, even if alleged conjunctively). Neither Poole nor Cantu testified that the fight or flight syndrome impaired one's awareness of the circumstances, nature, or result of one's conduct. *See* Tex. Pen. Code Ann. § 6.03(b) (West 2003) (defining "knowingly"). The court correctly refused to give the requested instructions because there was no evidence to support a rational finding that appellant did not knowingly place Marcus in fear of imminent bodily injury or death.

In his brief to this Court, appellant argues even if the jury could have found that he knowingly placed Marcus in fear of imminent injury or death and knowingly used Marcus's vehicle without her consent, the jury could nevertheless have found that he did not intend to deprive Marcus of the vehicle because of the effects of the fight or flight syndrome. Appellant asserts that this possible scenario also entitled him to an instruction on unauthorized use of a vehicle. We do not reach this contention, however, because it was not presented to the trial court. Tex. R. App. P. 33.1(a); *see Posey v. State*, 966 S.W.2d 57, 61 (Tex. Crim. App. 1998); *Thomas v. State*, 701 S.W.2d 653, 656 (Tex. Crim. App. 1985); *Garza v. State*, 974 S.W.2d 251, 257 (Tex. App.—San Antonio, pet. ref'd).

The court did not err by refusing the requested lesser included offense instructions. Points of error one and two are overruled.

### *Recording*

In point of error three, appellant contends the trial court erred by admitting State's exhibit 136, a recording of what was said to be a telephone conversation between appellant and his

6

girlfriend. Appellant contends the recording should not have been admitted because it was not properly authenticated. *See* Tex. R. Evid. 901.

The sponsoring witness was Austin Police Officer Rob Tucker. Tucker testified that all telephone calls made by Travis County jail inmates are automatically recorded by a computerized system. By entering a telephone number into the computer, an investigator can recover recordings of all calls made to that number from the jail during a specified time period. Tucker testified that he entered into this system the telephone numbers for appellant's aunt and girlfriend. He recovered about six hours of telephone conversations made during the month of August 2002. Exhibit 136 was a cassette tape containing the contents of a single telephone call made from the jail to appellant's girlfriend on the day after the robbery. During the conversation, the male caller said that he "got into an argument with a lady at this insurance store, her husband came in, her husband chased him, he tossed a — threw a gun out the window of a car when the police were chasing him." The caller went on to say that he had been shot by a police officer.

The caller did not identify himself by name during the conversation. Tucker said that he had spoken to appellant's girlfriend several times and recognized her voice, but that he was not familiar with appellant's voice. Tucker testified, however, that the caller gave specific details of the incident that only the perpetrator would know. He added that appellant was the only person shot by an Austin police officer during the month of August 2002.

Appellant objected to the introduction of the exhibit on the ground that he was not identified as the caller. The court overruled the objection, saying:

[F]irst of all, he sets out — from my understanding, he sets out facts which are consistent 100 percent with the facts that have already been testified to here in the trial.

Secondly, he talks about a gun, particularly he talks about throwing out a gun that they found. He talks about getting shot, which he was the only one in that time period that was shot by the Austin Police Department.

I think all of that is consistent upon which a reasonable observer listening to it would think that's the guy talking. I mean, I don't think you have to know the timbre of the voice that you're listening to in order to be able to say that's the guy.

I mean, he can say, based on those facts, that that's the fellow, especially when he's calling a woman that's already identified herself as his girlfriend. I think that that definitely authenticates that conversation enough.

If the objection is based on 901, then I will overrule the objection that the Defense is making at this point.

Appellant argues that the State was required to satisfy the three-part authentication test applied in *Angleton v. State*, 971 S.W.2d 65, 67 (Tex. Crim. App. 1998). But the court in *Angleton* emphasized that the test employed there was applicable only "*in this case*." *Id.*; *and see id*. n.3. The court made it clear that the only test for authentication of a recording is found in rule 901, overruling prior case law to the contrary. *Id*. at 69.

The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims. Tex. R. Evid. 901(a). The rule provides several nonexclusive, illustrative examples of sufficient authentication or identification, including the presence of "distinctive characteristics, taken in conjunction with circumstances." *Id*. rule 901(b)(4). In this case, the trial

8

court did not abuse its discretion by concluding that the circumstances were adequate to identify the caller as appellant.  Point of error three is overruled.

### *Batson*

In his last two points of error, appellant accuses the State of racial discrimination in the use of its peremptory strikes.  *See Batson v. Kentucky*, 476 U.S. 79, 88-89 (1986); Tex. Code Crim. Proc. Ann. art. 35.261 (West 1989).  A *Batson* analysis has three steps: (1) the defendant must make a prima facie showing that the State made a race-based strike against an eligible panelist; (2) if a prima facie case is made, the State must come forward with a race-neutral reason for the strike; (3) if the State offers a race-neutral reason, the burden shifts to the defendant to persuade the court that the stated reason for the strike is a mere pretext for racial discrimination.  *Mandujano v. State*, 966 S.W.2d 816, 818 (Tex. App.—Austin 1998, pet. ref'd).  If the trial court rules on the ultimate question of racial discrimination, it is the explanation and not the prima facie showing that we review on appeal.  *Malone v. State*, 919 S.W.2d 410, 412 (Tex. Crim. App. 1996).  We review the court's decision for clear error.  *Lopez v. State*, 940 S.W.2d 388, 390 (Tex. App.—Austin), *pet. ref'd*, 954 S.W.2d 774 (Tex. Crim. App. 1997).  That is, we must have a "definite and firm conviction that a mistake has been committed" after reviewing all of the evidence in the light most favorable to the ruling.  *Vargas v. State*, 838 S.W.2d 552, 554 (Tex. Crim. App. 1992).

The State used peremptory strikes against panelists one and nine, who were the only black panelists in the strike zone.  The prosecutor explained the strike of panelist one by pointing out that her juror information card indicated that she had worked at a mental health hospital.  The

9

prosecutor told the court that because defense counsel had made it clear during voir dire that he intended to raise "this mental health stuff," the State felt that it was best to exclude the panelist due to her prior employment. The prosecutor also told the court that panelists eleven and eighteen, both white, had also been peremptorily challenged because they were "nurses working in a similar type of medical field for that same reason."

Appellant argues that the record does not support the State's assertion that panelist one had been employed in the "medical field."[2] He did not, however, challenge the prosecutor's statement, which was apparently accepted by the trial court. *See Yarborough v. State*, 947 S.W.2d 892, 896 (Tex. Crim. App. 1997) (prosecutor's undisputed description sufficient to show panelist's demeanor). Appellant's only response to the prosecutor's race-neutral explanation for striking panelist one was to assert, "Judge, it is not about working in a mental health facility. It is 2003. It is about race, and we know it." The court replied, "I disagree." We cannot state on this record that the court was clearly wrong to do so. Point of error four is overruled.

The State explained its peremptory strike of panelist nine as follows: "Our office put her grandson in prison for 50 years. The State feels that is a race neutral reason to strike her." Appellant did not respond to this explanation, which is race-neutral on its face, and there was no further discussion of this panelist in the trial court. Appellant now points out that the panelist told the trial court during a conversation at the bench that she was not biased against the State as a result of her grandson's conviction and that she could be a fair juror. The issue is not, however, whether the record would support a challenge for cause by the State, but whether the record shows that the

---

[2] The juror information cards are not in the record.

10

State's race-neutral reason for striking the panelist was a pretext. Appellant does not contend that any similarly situated panelist was allowed to remain on the jury. Our own review of the record shows that another panelist had a brother who had received a probated sentence for a minor offense in another county. Although this panelist assured the court that this would not affect her judgment in this cause, she was also peremptorily struck by the State. Appellant did not meet the burden of showing that the State's express reason for striking panelist nine was a pretext for racial discrimination. The trial court's ruling was not clearly erroneous. Point of error five is overruled.

The judgments of conviction are affirmed.

_____

Bob Pemberton, Justice

Before Justices Kidd, B. A. Smith and Pemberton

Affirmed

Filed: June 24, 2004

Do Not Publish