**Affirm and Opinion Filed August 27, 2013**



In The

**Court of Appeals**

**Fifth District of Texas at Dallas**

## No. 05-11-00991-CR

**VINCENT PAUL RIOJAS, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 282nd Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. F09-30527-S**

## MEMORANDUM OPINION

Before Justices Bridges, Lang, and Richter[1]
Opinion by Justice Bridges

Vincent Paul Riojas appeals his manslaughter conviction. Following appellant's guilty plea, the jury assessed punishment at sixty years' confinement and a $10,000 fine. In a single issue, appellant argues the trial court abused its discretion in admitting an exhibit containing five mug shots of appellant. We affirm the trial court's judgment.

On August 15, 2009, appellant was driving in Grand Prairie at approximately 9:20 p.m. when he struck Ronnie Keller, who was riding a bicycle. Both appellant and Keller were intoxicated. Grand Prairie Police officer Joseph Kalota, an accident reconstructionist, testified appellant's car crossed over to the wrong side of the road and struck Keller head-on. Appellant's front windshield was "smashed out on the top," and there was some hair and "scalp matter at the

---

[1] The Hon. Martin Richter, Justice, Assigned

top of the windshield." The rear windshield was completely smashed out. Kalota's opinion was that when appellant hit Keller, Keller "went over the hood, the windshield, the roof, and then through the back windshield of the vehicle." Kalota testified, "there was a large amount of blood all over the vehicle." In Kalota's opinion, if Keller had fallen to the ground before being picked up and placed in the car, "we would have found a lot of blood on the ground, and we didn't."

Grand Prairie Police officer Chris Evans testified he was dispatched to appellant's house in response to a 911 call from appellant's mother. When Evans arrived, he saw appellant's mother and brother standing out in the yard. Evans also saw a white Chevrolet Cavalier parked on the south side of the house between some trees and the house "kind of secreted." The Cavalier was parked "not some place you would normally see somebody park." The car was "backed up over a curb, backed through the grass, and on the side of the house." Appellant's brother told Evans there was an unknown man bleeding in the back of appellant's car. Evans went to the white Cavalier and saw the car had front end damage. In the back seat of the car was Keller, "slumped over at a ninety-degree angle, which is not normal." Keller's leg was broken, and Evans could see bone and "a lot of blood." "[I]t looked like somebody had taken a bucket and dumped blood in there." Evans asked Keller some questions, but he just "kind of gurgled." Evans checked the area for appellant but could not find him. Once Evans deemed it safe, he allowed medics to come in and treat Keller.

Thomas Zolkowski, a paramedic, arrived at the scene and saw appellant's car "backed up against a fence underneath some trees between two houses." A police officer led him to the car where Keller was sitting in the back seat. Keller's left leg was extended over the middle console, and his right leg was on the floorboard and appeared to be broken in several places. Keller's torso was "folded over," and his "face was in the floorboard." It was difficult to remove Keller from the car because it was muddy and dark, and Zolkowski cut Keller's jeans off to aid in his

removal. Cutting Keller's jeans off "released pressure for his right leg and it was at that point his leg basically separated from his hip." Keller later died from his injuries.

Meanwhile, police were searching for appellant in the area near his home. Grand Prairie Police officer Ronnie Morris testified he found appellant hiding under a truck parked in the driveway of the house next door. At first, appellant did not respond to Morris' command to come out from under the truck. Eventually, appellant began "to do a belly crawl out from under this truck," and Morris instructed him to stay on the ground and put his hands behind his back. Instead, appellant got up and "immediately tried to take off running." Morris grabbed appellant by the shirt, and appellant "started swinging wildly." Morris took appellant to the ground, but appellant continued to struggle, so Morris told another officer, Lieutenant Clay, to use his taser on appellant. While he was being tased, appellant said "Okay. Okay. Okay. I give up." However, when the taser was pulled away, appellant continued to struggle. Finally, Morris and Clay succeeded in handcuffing appellant and escorted him to a patrol car. At the police station following his arrest, Grand Prairie Police officer Christopher Durbin overheard appellant talking on the telephone in the holding area. Appellant said, "I shouldn't even be here right now. I'm not going back to jail. The guy – the guy was just a bum. You know, he doesn't – he doesn't even deserve to live. I can't believe I'm in here right now for this."

Appellant was subsequently charged with manslaughter and pled guilty. During the punishment hearing, the State introduced evidence of three prior felony convictions and two misdemeanor convictions without objection. However, appellant did object to the introduction of five mug shots associated with Class C misdemeanor arrests that did not result in convictions. A jury sentenced him to sixty years' confinement and a $10,000 fine. This appeal followed.

In a single issue, appellant argues the trial court erred in admitting an exhibit containing five mug shots of appellant. Specifically, appellant argues the mug shots were not relevant and their probative value, if any, was outweighed by the danger of unfair prejudice.

We review a trial court's ruling under the rules of evidence for an abuse of discretion. *Angleton v. State*, 971 S.W.2d 65, 67 (Tex. Crim. App. 1998). The trial court must be given wide latitude to exclude or, particularly in view of the presumption of admissibility of relevant evidence, *not* to exclude misconduct evidence as it sees fit. *Montgomery v. State,* 810 S.W.2d 372, 390 (Tex. Crim. App. 1990) (emphasis in original). So long as the trial court operates within the boundaries of its discretion, an appellate court should not disturb its decision. *Id.*

Relevant evidence is that which has any tendency to make the existence of any fact of consequence more or less probable than it would be without the evidence. TEX. R. EVID. 401. Rule 403 allows for the exclusion of otherwise relevant evidence when its probative value is substantially outweighed by the danger of unfair prejudice. TEX. R. EVID. 403. Rule 403 favors the admission of relevant evidence and carries a presumption that relevant evidence will be more probative than prejudicial. *Davis v. State*, 329 S.W.3d 798, 806 (Tex. Crim. App. 2010). "The term 'probative value' refers to the inherent probative force of an item of evidence—that is, how strongly it serves to make more or less probable the existence of a fact of consequence to the litigation—coupled with the proponent's need for that item of evidence." *Id.* (quoting *Casey v. State*, 215 S.W.3d 870, 879 (Tex. Crim. App. 2007)). "'Unfair prejudice' refers to a tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." *Id.* (quoting *Casey*, 215 S.W.3d at 880). All testimony and physical evidence are likely be prejudicial to one party or the other. *Id.* It is only when there exists a clear disparity between the degree of prejudice of the offered evidence and its probative value that rule 403 is applicable. *Id.*

During the punishment phase of trial, evidence may be offered as to any matter the court deems relevant, including evidence of the defendant's reputation or character. TEX. CODE CRIM. PROC. ANN. art. 37.07 3(A)(1) (West Supp. 2012); *Ho v. State*, 171 S.W.3d 295, 305 (Tex. App.—Houston [14th Dist.] 2005, pet. ref'd). Texas law allows the admission of unadjudicated extraneous bad acts at the punishment phase. *State v. Vasilas*, 187 S.W.3d 486, 489 n.4 (Tex. Crim. App. 2006); *Sierra v. State*, 266 S.W.3d 72, 78 (Tex. App.—Houston [1st Dist.] 2008, pet. ref'd).

The mug shots at issue here were introduced in connection with multiple officers' testimony concerning arrests for Class C misdemeanors that did not result in convictions. In arguing the mug shots were irrelevant, appellant asserts there are discrepancies between the numbers printed on some of the mug shots and the testimony of the officers concerning the dates of the arrests. In making this argument, he complains there was no certified court record to corroborate the officers' testimony. In arguing the mug shots were more prejudicial than probative, appellant argues the arrests associated with the mug shots did not result in convictions. Both of these arguments lack merit. The fact that the officers' testimony concerning the Class C arrests was not supported by certified court records does not render the mug shots irrelevant. *See* TEX. CODE CRIM. PROC. ANN. art. 37.07 3(A)(1) (West Supp. 2012); *Vasilas*, 187 S.W.3d at 489 n.4. Similarly, the mug shots' probative value was not substantially outweighed by the danger of unfair prejudice merely because the arrests at issue did not result in convictions. *See Vasilas*, 187 S.W.3d at 489 n.4; *Sierra*, 266 S.W.3d at 78. Accordingly, the trial court did not abuse its discretion in admitting the mug shots. *See Angleton*, 971 S.W.2d at 67. We overrule appellant's issue.

We affirm the trial court's judgment.

/David L. Bridges/
DAVID L. BRIDGES
JUSTICE

Do Not Publish
TEX. R. APP. P. 47

110991F.U05



# Court of Appeals
## Fifth District of Texas at Dallas
## JUDGMENT

VINCENT PAUL RIOJAS, Appellant

No. 05-11-00991-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the 282nd Judicial District
Court, Dallas County, Texas
Trial Court Cause No. F09-30527-S.
Opinion delivered by Justice Bridges.
Justices Lang and Richter participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this August 27, 2013

/David L. Bridges/

DAVID L. BRIDGES
JUSTICE